UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ANDREW LONGUSKI,

  Plaintiff,

            No. 2:19-cv-00190

v

            HON. PAUL L. MALONEY

RYAN AKERS and
GARY DEMERS,        MAG. MAARTEN VERMAAT

  Defendants.

---

Julie A. Gafkay
Attorney for Plaintiff
Gafkay Law, PLC
175 S. Main Street
Frankenmuth, MI 48734
(989) 652-9240
jgafkay@gafkaylaw.com
P58680

John G. Fedynsky (P65232)
Andrew Jurgensen (P81123)
Assistant Attorneys General
Attorneys for Defendant Akers
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
fedynskyj@michigan.gov
froehlichj1@michigan.gov

James T. Farrell (P35400)
Assistant Attorney General
Attorney for Defendant Demers
Michigan Dep't of Attorney General
MDOC Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
farrellj@michigan.gov

---

**DEFENDANT AKERS'S BRIEF IN SUPPORT OF HIS MOTION
FOR DISMISSAL OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT,
IN LIEU OF HIS ANSWER**

Dana Nessel
Attorney General

*/s/ John G. Fedynsky*
John G. Fedynsky (P65232)
Andrew Jurgensen (P81123)
Assistant Attorneys General
Attorneys for Defendant Akers
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
fedynskyj@michigan.gov
jurgensenA2@michigan.gov

Dated:  December 19, 2019

# TABLE OF CONTENTS

Page

Table of Contents ................................................................................. i

Concise Statement of Issues Presented ........................................... ii

Controlling or Most Appropriate Authority ...................................... ii

Introduction ........................................................................................ 1

Statement of Facts ............................................................................. 2

    Longuski visits Mackinac Island for a conference. .......................... 2

    Longuski acted suspiciously in front of police while out late with
    friends. ............................................................................................. 2

    The warrant request is approved. ................................................... 3

    Longuski's critiques of the investigation. ....................................... 4

    Akers's incident report and basis for probable cause. .................... 4

    Longuski's claims ............................................................................ 6

Standard of Review ........................................................................... 6

Argument ............................................................................................ 8

I.    Longuski fails to state a recognized due process claim. ................. 8

    A.    Longuski has no substantive due process claim. .................. 8

    B.    Longuski has no procedural due process claim. ................... 9

    C.    The allegations cluster under the Fourth Amendment and not
        the Fourteenth Amendment. .................................................. 10

    D.    Even if construed as a Fourth Amendment claim, Trooper Akers
        is entitled to qualified immunity against Count I. ................ 10

II.    The state law malicious prosecution claim cannot overcome
    governmental immunity. ................................................................. 15

Conclusion and Relief Requested .................................................... 19

i

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Substantive due process protects against conscience-shocking government behavior whereas procedural due process requires an absence of available procedures under state law.  Longuski was the subject of a misdemeanor investigation that did not shock the conscience and that involved a criminal process that afforded him ample process.  Does Longuski fail to state a claim under the Fourteenth Amendment for violation of his due process rights?  Alternatively, is Trooper Akers entitled to qualified immunity against Count I?

2.    To overcome governmental immunity under Michigan law, a plaintiff must show that the public official acted outside the scope of discretionary authority and with bad faith.  Trooper Akers conducted a good faith investigation within the bounds of his discretion as a police officer.  Is Akers entitled to governmental immunity against Count II?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:
**Cases:**
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
*Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
*Burns v. Olde Discount Corp*, 212 Mich. App. 576 (1995).
*Commercial Money Ctr, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2007).
*County of Sacramento v. Lewis*, 523 U.S. 833 (1998).
*Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988).
*Graham v. Connor*, 490 U.S. 386 (1989).
*Hunter v. Bryant*, 502 U.S. 224 (1991).
*Jefferson v. Jefferson County Public School System*, 360 F.3d 583 (6th Cir. 2004).
*Klein v. Long*, 275 F.3d 544 (6th Cir. 2001).
*Maryland v. Pringle*, 540 U.S. 366 (2003).
*Matthews v. Blue Cross and Blue Shield of Michigan*, 456 Mich. 365 (1998).
*Odom v. Wayne County*, 482 Mich. 459 (2008).
*Pearson v. Callahan*, 555 U.S. 223 (2009).
*Peterson Novelties, Inc. v. City of Berkeley*, 259 Mich. App. 1 (2003).
*Saucier v. Katz*, 533 U.S. 194 (2001).
*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010).

**Statutes:**
Mich. Comp. Laws § 257.658.
Mich. Comp. Laws § 750.170.
Mich. Comp. Laws § 750.356(5).

## INTRODUCTION

A plaintiff's sophomoric tomfoolery is rarely the basis of a valid federal lawsuit.  Plaintiff Andrew Longuski, a high-ranking and long-serving member of the Michigan State Police, should have known better on the night of Friday, May 19, 2018.  He was out late on Mackinac Island with friends and up to no good.  Somehow, he ended up the second person on the back of a one-person ladies' bicycle going down Main Street from one bar to the next.  Trooper Ryan Akers was on patrol and witnessed this.  A local police officer advised that he suspected the bike was stolen.  Why?  Because it was a purple and pink ladies' bicycle registered to a female summer employee, and not to a couple of summer tourists out for a joy ride.  Akers investigated further, and confronted the high-ranking police officers involved, who reacted in a manner that did themselves no favors.

Akers followed the direction of his command, which told him to write his report and pass it up the chain for review before a warrant request.  His supervisor approved the request, as did local prosecutorial and judicial authority.  Eventually the charges were dismissed without prejudice and with the prosecutor's recommendation that local authority pursue the case for ordinance violations.

Now, Longuski alleges that his due process rights and right against malicious prosecution were violated.  Why?  Because on a garden variety misdemeanor complaint the trooper did not deploy the kind of resources one might expect in a high profile homicide case.  The critiques of the investigation, moreover, merely pull at the edges and focus on immaterial matters that, even if true, do not eliminate reasonable suspicion that there was probable cause to pursue the case.  By and

large, the critiques offered are for a good criminal defense attorney to make after charges are pursued, and not for police in the field to assume to be true when other evidence weighs in favor of probable cause. Questions about the completeness of an incident report and what can be inferred from other evidence are inadequate as a matter of law to overcome qualified immunity under federal law and governmental immunity under Michigan law. Nor would any factual development lead to a different outcome on the trooper's threshold legal defenses. Accordingly, this Court should dismiss all claims with prejudice.

## STATEMENT OF FACTS

**Longuski visits Mackinac Island for a conference.**

Plaintiff D/F/Lt Andrew Longuski is a high-ranking polygraph examiner for the Michigan State Police (MSP) who has worked for MSP since 1994. (Compl. ¶¶ 10-11.) On the evening of Friday, May 18, 2018, he was on Mackinac Island for a professional conference and out to dinner with friends. (*Id.*, ¶¶ 12-13.) Shortly after 11:00 p.m., the group decided to leave the Pink Pony Bar and walk to Horn's Gaslight Bar and Restaurant. (*Id.*, ¶¶ 14-15.)

**Longuski acted suspiciously in front of police while out late with friends.**

D/Sgt Derrick Jordan "rode past the group, on a bike he had brought to the Pink Pony." (Compl., ¶ 16.) Longuski "told Jordan to hold on a minute so he could jump on the bike with him." (*Id.*) They rode together for about forty yards and then Defendant Trooper Ryan Akers warned them not to ride double on the bike. (*Id.*, ¶ 17.) Longuski went inside Horn's and later exited when Akers returned and

ordered him to "get out here." (*Id.*, ¶¶ 19-20.)  Longuski complied.  (*Id.*, ¶ 21.)

Akers accused Longuski and Jordan of stealing the bike and admonished them that

they should know better as police officers.  (*Id.*, ¶¶ 23-24.)  Jordan told Akers that

Longuski knew nothing about the bike.  (*Id.*, ¶¶ 25, 29.)  Longuski also denied

knowledge and said he was only a passenger for a short distance.  (*Id.*, ¶ 30.)

"Eventually, [Longuski] was so fed up with being harassed by [Trooper

Akers] he told him to either book him for possessing a stolen bike or let him go back

to the restaurant."  (Compl., ¶ 32.)  Akers released Longuski.  (*Id.*, ¶ 33.)  Akers

notified his supervisor, co-Defendant Sgt. Gary Demers, of the incident, who told

Akers to proceed with a report and enforcement action.  (*Id.*, ¶ 34.)

**The warrant request is approved.**

A few days later on or about May 21, 2018, MSP submitted a warrant request

to the local prosecutor for larceny of a bike less than $200 and disorderly conduct.

(Compl., ¶ 38.)  Local prosecutorial and judicial authority approved the warrant

request and Longuski was arrested and charged on May 23, 2018.  (*Id.*, ¶ 47.)  The

prosecutor dismissed the charges without prejudice on September 24, 2018.  (*Id.*, ¶

48; *see also* Motion/Order for Nolle Prosequi, Ex. A. to Aker Aff., Def.'s Ex. 1.)

According to the Mackinac County Prosecutor, Longuski's actions may have been a

violation of multiple Mackinac Island misdemeanor ordinances.  (Motion/Order, Ex.

A.)  "The Prosecution dismisses and refers the case back to Mackinac Island for

appropriate actions."  (*Id.*)  Upon information and belief, Mackinac Island has not

pursued any charges against Longuski.

**Longuski's critiques of the investigation.**

Longuski takes issue with several aspects of the misdemeanor investigation:

·   Failure to retrieve nearby surveillance video

·   Disregarding Jordan's statements that Longuski did not know about the bike

·   Failing to identify and interview witnesses at the scene

·   Making assumptions about the bike being stolen twice

·   Misrepresenting what actually happened

·   Various alleged inaccuracies in Akers's incident report

·   Failing to ask Longuski to take a sobriety test

(Compl., ¶¶ 40, 46.)

**Akers's incident report and basis for probable cause.**

Trooper Akers wrote an incident report that memorialized his investigative activities and observations.  (MSP Incident Report, Def.'s Ex. 2; Akers Aff., Def.'s Ex. 1.)  Several facts supported probable cause for Akers, including but not limited to the following.  Around 11:30 p.m., he observed Longuski riding behind Jordan on the back of a single person bicycle, which is a violation of Mich. Comp. Laws § 257.658.  (Akers Aff., ¶ 8(a).)  The bicycle was a ladies' bicycle in design, and purple in color with a pink seat.  (*Id.*, ¶ 8(b).)  Longuski and Jordan displayed signs of intoxication.  (*Id.*, ¶ 8(c).)  Mackinac Island Police Officer Cory Kaminen ran the bicycle registration and determined it belonged to a female employee of the Inn on Mackinac.  (*Id.*, ¶ 8(d).)  Kaminen indicated suspicion that the bike was stolen

because it belonged to a summer employee and the two individuals riding it appeared to be tourists.  (*Id.*)

When Akers confronted Longuski and Jordan with suspicions about the ownership of the bike, they confirmed that they were police officers.  (Akers Aff., ¶ 8€.)  They denied responsibility and became profane after Akers told them they should know better than to take a bicycle that did not belong to them.  (*Id.*)  Both of them challenged his authority, attempted to minimize what had occurred, and insinuated that he should drop the matter.  (*Id.*)  Jordan told Akers that a "friend" lent him the bike but he avoided  questions about who this friend was.  (*Id.*, ¶ 8(f))

An employee of the Pink Pony advised Akers that she was working the front door and saw Longuski and Jordan get on the bike and ride away.  (Akers Aff., ¶ 8(g).)  She heard them and their friends joking about where to go and whether they were stealing the bike.  (*Id.*)

At about 2:00 a.m., Akers could hear Plaintiff and his group leave Horns Bar when it closed.  They appeared highly intoxicated and used frequent profanity I could hear from a block away.  (*Id.*, ¶ 8(h).)

Akers spoke with the bicycle's registered owner (on May 19, 2018, after the incident) and she confirmed she had not loaned the bicycle to anyone or given anyone permission to use it.  (Akers Aff., ¶ 8(i).)  She also told Akers she paid $50 for the bike in 2015.  (*Id.*)

Longuski's claims.

On September 24, 2019, Longuski filed this federal lawsuit.  He alleges counts of (1) violation of Fourteenth Amendment Due Process and (2) malicious prosecution under Michigan law.  (Compl., ¶¶ 51-60.)  For the reasons stated below, Longuski fails to state a claim and otherwise cannot overcome applicable qualified immunity and governmental immunity.

## STANDARD OF REVIEW

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), this Court must accept as true the allegations of the complaint and then determine whether the statements are sufficient to make out a right of relief.  *United States v. Gaubert*, 499 U.S. 315, 327 (1991).  However, although it must accept well-pled facts as true, the Court is not required to accept a plaintiff's legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  In evaluating the sufficiency of a plaintiff's pleadings, this Court may make reasonable inferences in the non-moving party's favor, "but [this Court is] not required to draw [p]laintiffs' inference."  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, conclusory allegations are "not entitled to be assumed true."  *Iqbal*, 556 U.S. at 681.

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face.  *See Iqbal*, 556 U.S. at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard).  In

*Twombly,* the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and quotations omitted).

In *Iqbal*, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible. . . ." *Twombly*, 550 U.S. at 570.

Though this is a motion for judgment on the pleadings, the court may consider an attached document without converting the motion into one for summary judgment if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *See Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir. 1999); *see also Commercial Money Ctr, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "Undisputed" in this context means that the authenticity of the

document is not challenged.  *See, e.g., Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 16–17 (1st Cir. 1998); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994).

## ARGUMENT

### I.  Longuski fails to state a recognized due process claim.

It is apparent on the face of the complaint that Count I fails to state a due process claim under the Fourteenth Amendment.  While the complaint does not specify if the claim is substantive or procedural in nature, neither theory is viable.

### A.  Longuski has no substantive due process claim.

Longuski's allegations, even if true, fail to rise to the level of a substantive due process violation.  "Protection against governmental arbitrariness is the core of . . . substantive due process . . . but only the most egregious executive action can be said to be 'arbitrary' in the constitutional sense[.]"  *County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) (citations omitted)  "[T]he cognizable level of executive abuse of power is that which shocks the conscience[.]"  *Id.* (citations omitted).  "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir.

2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  A misdemeanor police investigation, however ill-conceived or mismanaged, falls far short of this standard.  The allegations in the complaint simply fail to rise to the level of conscience-shocking.  Accordingly, Longuski has no viable theory of substantive due process to support Count I.

### B.    Longuski has no procedural due process claim.

Nor does Longuski appear to have a claim that he was deprived of procedural due process.  Michigan courts already have adequate procedural safeguards in place.  *Hudson v. Palmer*, 468 U.S. 517, 533, (1984).  Some injury to a property or liberty interest is not enough.  Longuski must also attack the state's corrective procedure.  *Id.*  "Plaintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations."  *Jefferson v. Jefferson County Public School System*, 360 F.3d 583, 588 (6th Cir. 2004) (citations omitted).  "Although one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove as an element of that claim that state procedural remedies are inadequate."  *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988).  Here, the procedures available in Michigan worked for Longuski.  Charges were filed, and he had adequate notice and opportunity to be heard.  Through that procedure, he obtained relief in the form of an order of nolle prosequi.  Accordingly, he can have no federal claim for denial of procedural due process.

**C.      The allegations cluster under the Fourth Amendment and not the Fourteenth Amendment.**

Additionally, the allegations in the complaint cluster under the Fourth

Amendment, which explicitly addresses the types of violations alleged – police

misconduct and malicious prosecution, etc.  The nature of the trooper's official

duties also fall primarily under the rubric of the Fourth Amendment.  The United

States Supreme Court has instructed courts to not analyze such claims under

different constitutional provisions.  "Today we . . .  hold that *all* claims that law

enforcement officers have used excessive force—deadly or not—in the course of an

arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

under the Fourth Amendment and its 'reasonableness' standard, rather than under

a 'substantive due process' approach."  *Graham v. Connor*, 490 U.S. 386, 395 (1989)

(emphasis in original).  "Because the Fourth Amendment provides an explicit

textual source of constitutional protection against this sort of physically intrusive

governmental conduct, that Amendment, not the more generalized notion of

'substantive due process,' must be the guide for analyzing these claims."  *Id*.

Accordingly, the intrusive conduct alleged in the complaint must fall under the

Fourth Amendment and not an unrecognized concept of due process violation.


**D.      Even if construed as a Fourth Amendment claim, Trooper Akers is entitled to qualified immunity against Count I.**

To the extent that the Court might liberally construe Count I to state a

Fourth Amendment malicious prosecution claim, it would still fail under applicable

qualified immunity doctrine.  The doctrine of qualified immunity is not merely a

defense to liability but also a shield for public officials against the burdens of litigation and trial. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (collecting cases). "Accordingly, 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Qualified immunity is designed to "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

Qualified immunity analysis consists of two distinct inquiries. *Saucier v. Katz*, 533 U.S. 194 (2001). Typically, a court must determine whether, taken in a light most favorable to the plaintiff, the facts alleged demonstrate that the officer violated a constitutional right. *Saucier*, 533 U.S. at 201. If the court determines that a constitutional deprivation has been properly alleged, it must determine whether the right was clearly established as viewed within the specific context of the facts of the case. *Saucier*, 533 U.S. 194. The Supreme Court held that this order of inquiry is not mandatory, allowing courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Apart from conclusory legal assertions, the complaint fails to assert that the trooper violated any clearly established constitutional rights. It is undisputed that Longuski was seen late at night riding with another person on a one-person bike.

11

This fact alone is adequate probable cause to suspect violation of applicable Michigan law.

> (1) A person propelling a bicycle or operating a motorcycle or moped shall not ride other than upon and astride a permanent and regular seat attached to that vehicle.
>
> (2) A bicycle or motorcycle shall not be used to carry more persons at 1 time than the number for which it is designed and equipped. Mich. Comp. Laws § 257.658.

In addition, it also cannot be reasonably disputed that Longuski was on a purple and pink ladies' bicycle registered locally to a female summer employee, and not to a tourist like him or Jordan. The owner of the bike confirmed for Akers the value of the bike and the fact that she did not give anyone else permission to take possession of it. Jordan claimed the bike belonged to a friend, but then he avoided the question when Akers asked who this friend was. Under the circumstances, Akers had every reason to believe that Longuski had no business possessing that bike and that he otherwise acted in concert with the person pedaling it. This apparent behavior is both larcenous[1] and disorderly.[2]

A federal malicious prosecution claim requires a showing that:

---

[1] "If the property stolen has a value of less than $200.00, the person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00 or 3 times the value of the property stolen, whichever is greater, or both imprisonment and a fine." Mich. Comp. Laws § 750.356(5).

[2] "Any person who shall make or excite any disturbance or contention in any tavern, store or grocery, manufacturing establishment or any other business place *or in any street*, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor." Mich. Comp. Laws § 750.170 (emphasis added).

(1)     a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute,

(2)     there was a lack of probable cause for the criminal prosecution,

(3)     as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure, and

(4)     the criminal proceeding must have been resolved in the plaintiff's favor.  *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).

"To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable . . . officer, amount to probable cause."  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotation omitted); *see also United States v. Abdi*, 463 F.3d 547, 557-58 (6th Cir. 2006).  For a police officer to have probable cause for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense."  *Crockett v. Cumberland College*, 316 F.3d 571, 580-81 (6th Cir. 2003) (quotation omitted).  "Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing."  *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).  "The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty."  *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998).

"The court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). The court must assess probable cause from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). "The Fourth Amendment does not require that a police officer know a crime occurred at the time the officer arrests or searches a suspect." *Strickland*, 144 F.3d at 415.

Once an officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect. *Klein*, 275 F.3d at 551. "A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss*, 867 F.2d at 263.

Accordingly, Akers had no duty to credit the protestations of innocence by Longuski or Jordan. Nor was he required to gather the information of every potential bystander and risk what might have happened if he prolonged the encounter and expanded it to include other bar patrons and employees. Additionally, Akers was not dealing with the crime of the century here. There is no clearly established authority requiring him to chase down every rabbit hole and track down every potential bit of evidence.

14

The surveillance video described in the complaint was not readily available to Akers and not the type of evidence that he would need on top of what he already had. The content, moreover, even if the allegations are true, merely pull at the edges and address tangential, immaterial matters like when did Jordan first appear with the bike, when did Longuski climb on, and how did it come to be parked after Akers first approached them. Those discrepancies, even if true, do not deprive an ordinarily prudent officer of probable cause to suspect Longuski was involved in a larceny and being disorderly.

None of Longuski's critiques undercut the other key operative facts about who owned the bike and how Longuski came to co-possess it with Jordan and without the true owner's permission. The video as described also fails to erode the trooper's reasonable belief that Longuski was being disorderly and had violated Mich. Comp. Laws § 257.658. In addition to his own observations, the trooper had information from fellow officers, from the owner of the bike, and from a tavern employee, all of which supported probable cause. Accordingly, Trooper Akers is entitled to qualified immunity for Count I, however it may be construed.

## II.     The state law malicious prosecution claim cannot overcome governmental immunity.

Count II is brought under Michigan law. (Compl. ¶ 56.) A malicious prosecution claim requires proof that there was no probable cause for the proceeding. *Burns v. Olde Discount Corp*, 212 Mich. App. 576, 581 (1995). Additionally, the prosecutor's exercise of independent discretion in initiating and

maintaining a prosecution is a complete defense to an action for malicious prosecution under Michigan law. *Matthews v. Blue Cross and Blue Shield of Michigan*, 456 Mich. 365, 385 (1998) (*citing Christy v. Rice,* 152 Mich. 563, 565 (1908)). Longuski has "the difficult burden of proving four elements: (1) that the defendant[s] ha[ve] initiated a criminal prosecution against [them], (2) that the criminal proceedings terminated in [their] favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Peterson Novelties, Inc. v. City of Berkeley*, 259 Mich. App. 1, 21 (2003) (citation, quotation omitted). For the reasons stated below, this claim of malicious prosecution cannot overcome applicable governmental immunity.

Governmental immunity is a threshold legal defense that is broad in its scope and application. In *Odom v. Wayne County*, 482 Mich. 459, 461-462 (2008), the Michigan Supreme Court determined that the immunity from intentional tort liability given to lower-level governmental officials was not extinguished by adoption of the "gross negligence" standard in Mich. Comp. Laws § 691.1407(2). Specifically, the *Odom* court reaffirmed and restated the *Ross v. Consumers Power Co.* test as the standard for providing governmental employees qualified immunity from intentional tort liability. *Ross v. Consumers Power Co (on Rehearing),* 420 Mich. 567, 633, 634 (1984).

Under the *Ross* test, lower level officials, employees, and agents are immune from intentional tort liability when they are:

> (1)     acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
>
> (2)     acting in good faith; and
>
> (3)     performing discretionary, as opposed to ministerial acts. *Odom,* 482 Mich. at 473-476 (citing *Ross,* 420 Mich. at 633-634).

Here, the first element is met, as the claims arise out of the trooper's official duties as an officer of the state police investigating a misdemeanors that occurred in his presence.

The third element is also met because, by definition, the investigatory police work challenged here is discretionary and not ministerial or operational. These actions and decisions are the very essence of the discretion and judgment routinely and regularly exercised by both law enforcement officers and public officials tasked with the trooper's responsibilities.

There is also no question about the second element – the trooper's good faith. Under *Odom*, "there is no immunity when the governmental employee acts maliciously or with a wanton or reckless disregard of the rights of another." *Odom*, 482 Mich. at 474 (footnote omitted). Such "'willful and wanton misconduct is made out *only if* the conduct alleged shows an *intent to harm* or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that

17

it does.'" *Odom,* 482 Mich. at 475, (quoting *Burnett v. City of Adrian,* 414 Mich. 448, 455 (1982) (emphasis added)).

Here, it cannot be reasonably inferred that the trooper was reckless or otherwise did not care about finding the true perpetrators of the crime.  At best, Longuski alleges a botched police investigation that went off the rails due to the exigencies of the Friday night situation and the limitations of investigatory resources for petty crime.  But Monday morning is not the time to evaluate a quarterback's decisions on Sunday.  The allegations merely pull at the edges of the investigation, questioning tangential matters about the completeness of incident report narratives and what might have been inferred from surveillance video.  By and large, the critiques offered are for a good criminal defense attorney to make after charges are pursued, and not for police in the field to assume to be true when other evidence weighs in favor of probable cause.

None of the allegations detract from the material, undisputed facts of the investigation.  For the reasons already stated with respect to qualified immunity (an objective standard), Longuski cannot overcome the higher protections of governmental immunity (a subjective standard).  He cannot show the absence of good faith and the presence of malice.  Nor can he wipe away the objective facts of the investigation that led the trooper to his good faith belief that there was probable cause to suspect several misdemeanor offenses.  Accordingly, Trooper Akers is entitled to governmental immunity and Count II should be dismissed with prejudice.

## CONCLUSION AND RELIEF REQUESTED

There is no license to act like a fool in public. When the behavior is disorderly and involves the unlawful possession of someone else's property, police have the discretion to investigate. That is exactly what happened here. As a matter of both fairness and good public policy, Trooper Akers is entitled to the protections of both qualified and governmental immunity. Longuski otherwise fails to state any cognizable claim for relief.

Akers respectfully requests that the Court (1) grant qualified immunity, (2) grant governmental immunity, (3) dismiss all claims, and (4) grant any other appropriate relief.

Respectfully submitted,

Dana Nessel
Attorney General

*/s/ John G. Fedynsky*
John G. Fedynsky (P65232)
Andrew Jurgensen (P81123)
Assistant Attorneys General
Attorneys for Defendant Akers
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
fedynskyj@michigan.gov
jurgensenA2@michigan.gov

Dated: December 19, 2019

## CERTIFICATE OF SERVICE

I certify that on December 19, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record.

/s/ John G. Fedynsky
John G. Fedynsky (P65232)
Assistant Attorney General

AG #2019-0268791-A