UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDREW LONGUSKI,
    Plaintiff,

                                CASE NO.: 2:19-cv-190
                                HON.: Paul L. Maloney
                                Magistrate Maarten Vermaat

v.

RYAN AKERS in his individual capacity, and
GARY DEMERS in his individual capacity.
    Defendants.

---

| | |
|---|---|
| JULIE A. GAFKAY (P53680) | JAMES T. FARRELL (P35400) |
| GAFKAY LAW, PLC | MICHIGAN DEPARTMENT OF |
| Attorney for Plaintiff | ATTORNEY GENERAL |
| 175 S. Main Street | Attorney for Defendant Demers |
| Frankenmuth, MI 48734 | MDOC Division |
| (989) 652-9240 | P.O. Box 30217, Lansing, MI 48909 |
| jgafkay@gafkaylaw.com | (517) 335-3055 |
| | farrellj@michigan.gov |

JOHN G. FEDYNSKY (P65232)
JOSEPH T. FROEHLICH (P71887)
MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
Attorneys for Defendant Akers
P.O. Box 30754,
Lansing, MI 48909
(517) 335-7573
fedynskyj@michigan.gov
froehlichj1@michigan.gov

---

## PLAINTIFF'S RESPONSE TO DEFENDANT AKERS'S MOTION FOR DISMISSAL OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT, IN LIEU OF HIS ANSWER

**NOW COMES** Plaintiff, Andrew Longuski, by and through his attorney, GAFKAY LAW, PLC, and for his response in opposition to Defendant Akers's Motion for Dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, summary judgment, in lieu of his Answer, Plaintiff relies on the accompanying brief.

WHEREFORE, for the reasons more fully stated in the accompanying brief, Plaintiff respectfully requests that this Honorable Court deny Defendant Akers's Motion to Dismiss and request for summary judgment.

Dated: 1/16 /2020                    Respectfully submitted;

                                     GAFKAY LAW, PLC

                                     /s/Julie  A. Gafkay
                                     JULIE A. GAFKAY (P53680)
                                     Attorney for Plaintiff
                                     175 S. Main Street
                                     Frankenmuth, MI  48734
                                     (989) 652-9240
                                     jgafkay@gafkaylaw.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDREW LONGUSKI,
    Plaintiff,

                    CASE NO.: 2:19-cv-190
                    HON.: Paul L. Maloney
                    Magistrate Maarten Vermaat

v.

RYAN AKERS in his individual capacity, and
GARY DEMERS in his individual capacity.
    Defendants.

---

| | |
|---|---|
| JULIE A. GAFKAY (P53680) | JAMES T. FARRELL (P35400) |
| GAFKAY LAW, PLC | MICHIGAN DEPART OF |
| Attorney for Plaintiff | ATTORNEY GENERAL |
| 175 S. Main Street | Attorney for Def Demers |
| Frankenmuth, MI 48734 | MDOC Division |
| (989) 652-9240 | P.O. Box 30217, Lansing, MI 48909 |
| jgafkay@gafkaylaw.com | (517) 335-3055 |
| | farrellj@michigan.gov |

JOHN G. FEDYNSKY (P65232)
JOSEPH T. FROEHLICH (P71887)
MICHIGAN DEPARTMENT OF ATTORNEY GENERAL
Attorneys for Defendant Akers
P.O. Box 30754,
Lansing, MI 48909
(517) 335-7573
fedynskyj@michigan.gov
froehlichj1@michigan.gov

---

## PLAINTIFF'S BRIEF IN OPPOSITION DEFENDANT AKERS'S MOTION FOR DISMISSAL OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT, IN LIEU OF HIS ANSWER

# TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUES PRESENTED................ii

INDEX OF AUTHORITIES...................................................iii, iv

INTRODUCTION.............................................................1-4

STATEMENT OF FACTS..................................................4-11

LEGAL ANALYSIS..........................................................11-28

    A. Summary Disposition Standard.................................11-28

       I.     Plaintiff has stated Constitutional Claims under § 1983 for Violation of Plaintiff's Procedural Due Process Claim under the Fourteenth Amendment and Malicious Prosecution under the Fourth Amendment ........................................................................14-26

           A. Plaintiff has stated a Procedural Due Process Claim Pursuant to the Fourteenth Amendment. ..................................................................14-16

           B. Plaintiff has stated a Malicious Prosecution Claim Pursuant to the Fourth Amendment..........16-22

           C. Defendant Akers is not entitled to Qualified Immunity under Count I of Plaintiff's Complaint ..................................................................22-26

       II.    Plaintiff can Overcome Governmental Immunity with regard to his Malicious Prosecution Claim. ..................................................................26-28

CONCLUSION.............................................................28

COMPLIANCE STATEMENT...........................................30

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Does Longuski fail to state a claim under the Fourteenth Amendment for violation of his due process rights?
Alternatively, is Trooper Akers entitled to qualified immunity against Count I?

   Plaintiff answers ,"No."
   Defendant Akers answers, "Yes."
   Court answers

2. Is Akers entitled to governmental immunity against Count II?

   Plaintiff answers ,"No."
   Defendant Akers answers, "Yes."
   Court answers

# INDEX OF AUTHORITIES

<u>Case law</u>

*Albright v. Oliver,*
510 U.S. 266, 114 S. Ct. 807, 127 L.Ed.2d 114 (1994)................20

*Alspaugh v. McConnell,*
643 F.3d 162 (6th Cir. 2011)....................................................13

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242,106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).................7

*Ashcroft v. al-Kidd,*
563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).............23

*Barnes v. Wright,*
449 F.3d 709 (6th Cir. 2006).....................................................17

*Bower v. Federal Express Corp.,*
96 F.3d 200 (6th Cir. 1996).................................................11, 12

*California v. Trombetta,*
467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)................15

*Criss v. City of Kent,*
867 F.2d 259 (6th Cir. 1988).................................................... 24

*Elder v. Holloway,*
510 U.S. 510, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994)..............23

*Everson v. Leis,*
556 F.3d 484 (6th Cir. 2009).....................................................23

*Foman v. Davis,*
371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).....................17

*Friedman v. Dozorc,*
412 Mich 1(1981)..................................................................27

*Guilford v. Frost,*
269 F. Supp. 3d 816 (W.D. Mich. 2017).....................................22

*Harlow v. Fitzgerald,*
457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)..................23

*Hunter v. Bryant,*
502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589
(1991)..................................................................................24

*Intri-Plex Techs., Inc. v. Crest Group, Inc.,*

499 F.3d 1048 (9th Cir. 2007)....................................................12
*Klein v. Long,*
275 F.3d 544 (6th Cir. 2001)................................................ .20, 24
*McMillian v. Johnson,*
88 F.3d 1554 (11th Cir. 1996)....................................................14
*Maryland v. Pringle,*
540 U.S. 366, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003).................24
*Moldowan v. City of Warren,*
578 F.3d 351 (6th Cir. 2009)............................................14, 16,24
*Pakootas v. Teck Cominco Metals, Ltd.,*
632 F. Supp.2d 1029 (E.D. Wash. 2009)....................................12
*Pearson v. Callahan,*
555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).................23
*Posr v. Doherty,*
944 F.2d 91 (2nd Cir. 1991)......................................................25
*Riley v. Kurtz,*
893 F. Supp. 709, (E.D. Mich. 1995)..........................................17
*Siggers v. Campbell,*
652 F.3d 681 (6th Cir. 2011)....................................................13
*Song v. Elyria,*
985 F.2d 840 (6th Cir. 1993)....................................................13
*Stoudemire v. Michigan Dep't of Corr.,*
705 F.3d 560 (6th Cir. 2013)....................................................23
*Sykes v. Anderson,*
625 F.3d 294 (6th Cir. 2010)..............................................17,18,  25
*Terry v. Ohio,*
392 U.S. 1, 20 L. Ed.2d 889 S. Ct. 1868 (1968)...........................21
*United States v. Abdi,*
463 F.3d 547 (6th Cir. 2006)....................................................24
*United States v. McClain,*
444 F.3d 556 (6th Cir. 2005)....................................................20
*United States v. Mendenhall,*
446 U.S. 544, 64 L. Ed.2d 497, 100 S. Ct. 1870 (1980).................21
*United States v. Strickland,*
144 F.3d 412 (6th Cir. 1998)....................................................24

## Federal Rules and Statutes

Fed.R.Civ.P. 12(b)(6)....................................................... 11, 12

Fed.R.Civ.P. 15(a)(2)...........................................................17

Fed.R.Civ.P. 56.......................................................... 13, 22

## INTRODUCTION

A police officer misrepresenting and suppressing exculpatory evidence is a constitutional deprivation under our country's jurisprudence, regardless of the criminal defendant. It does not make the constitutional deprivation any less egregious when the criminal defendant is a high-ranking and long-serving member of the Michigan State Police; arguably, in some respects, it makes the constitutional violation more egregious.

Plaintiff, Andrew Longuski (hereinafter "Plaintiff" or "Longuski"), should have been afforded the same constitutional rights that every citizen of this country is guaranteed under the Fourth and Fourteenth Amendment. Instead, he was denied those rights, because of his status as an officer, because the lower ranking Defendant Ryan Akers (hereinafter "Defendant Akers" or "Akers"), thought he should know better. Defendant Akers turned what, at most, should have been a citation for riding double on a bike for a few seconds, into misdemeanor criminal allegations of theft and disorderly conduct against Plaintiff, without probable cause.

Defendant Akers chose what information to include and not to include in his report, which was reviewed by his supervisor and used to swear out a warrant request. Defendant Akers included false information and failed to include exculpatory evidence available to him. The exculpatory evidence Defendant Akers knew of, and omitted, would have led to the warrant not being issued, instead Plaintiff was criminally charged with two misdemeanors and endured months of legal proceedings, while being penalized in his position as a Michigan State Police officer. The Michigan State Police disciplined Defendant Akers for misconduct in connection with his investigation of Plaintiff.[1] (Complaint ¶ 11; ECF No. 1, Page ID. 12).

Plaintiff is alleging violations of the Fourth Amendment for malicious prosecution, Fourteenth Amendment for violation of his procedural due process rights, and a state claim of malicious prosecution. Plaintiff only expected what every other citizen should expect – the truth

---

[1] An official bulletin issued by the Michigan State Police on November 1, 2018, which is not necessarily relevant to the present 12(b)(6) Motion, but attached as Exhibit 1 because Defendant Akers attaches documents to his Motion for the Court outside the pleadings, states, in pertinent part, as follows:

"A department investigation established that [Akers] shirked their duties when they failed to thoroughly investigate and sufficiently and accurately document what occurred while investigating a larceny and disorderly persons complaint. **As a result of these failures, an individual was arrested and charged for a crime he did not commit**." (Emphasis Added).

Akers was issued an eight day suspension for his misconduct.

and exculpatory evidence at the fingertips of a reporting officer to be disclosed. Regardless of the criminal charge, a reporting officer has a constitutional obligation to the accused to meet that minimum threshold; to suggest "a garden variety misdemeanor complaint" is subject to a lower threshold, is to suggest constitutional guarantees do not apply in all criminal actions. Any criminal charge can have a devastating effect on the person charged, especially one involving an element of truthfulness[2].

Video evidence proving Plaintiff did not ride the bike in question to the Pink Pony, is not immaterial, as suggested by Defendant Akers – it is demonstrably exculpatory, yet, it was ignored by the reporting officer. In addition, the individual who is on the video riding the bike to the Pink Pony, expressly told Defendant Akers, Plaintiff did not steal the bike on the night of the incident, yet Plaintiff was still charged. The reporting officer, Defendant Akers, had an obligation under the constitution to disclose the information and failed to do so; presumably to teach a superior officer in the ranks of the Michigan State Police a lesson. The conduct by Defendant Akers, who was disciplined for misconduct, is best

---

[2] As this Court knows, pursuant to Fed.R.Evid. 609, a crime involving a dishonest act, like larceny, is admissible to impeach the credibility of a witness. As a police officer, especially one who heads the polygraph section, your credibility is extremely important. A criminal charge of larceny would be fatal to his position for an officer in Plaintiff's position.

described as "sophomoric tomfoolery," not Plaintiff's conduct. Accordingly, for the reasons more fully stated below, Defendant Akers's Motion for Dismissal or, in the Alternative, Summary Judgment, in lieu of his Answer, should be denied entirely.

## STATEMENT OF FACTS

Plaintiff began employment with the Michigan State Police in 1994. (Complaint ¶ 11; ECF No. 1, Page ID. 4). He was a D/F/Lt with the Michigan State Police polygraph and commander of the polygraph section. (Complaint ¶ 10; ECF No. 1, Page ID. 4). On or about May 18, 2018, Plaintiff attended a polygraph training conference on Mackinac Island (Complaint ¶ 12; ECF No. 1, Page ID. 4). After attending the conference dinner, Plaintiff, D/Sgt DeNoon, S/Sgt Heliin, Ms. DeNoon and Det. Gaudard took a carriage ride to the Pink Pony Bar. (Complaint ¶ 13; ECF No. 1, Page ID. 4). After being at the bar for approximately an hour and a half to two hours, at approximately 11:00 p.m., other officers who had been at the conference joined Plaintiff's group. (Complaint ¶ 14; ECF No. 1, Page ID. 4). Shortly thereafter, the group decided to leave the Pink Pony Bar and walk to Horn's Gaslight Bar and Restaurant. (Complaint ¶ 15; ECF No. 1, Page ID. 4).

Plaintiff began walking with most of the group towards the restaurant and D/Sgt Jordan ("Jordan") rode past the group, on a bike he had brought to the Pink Pony. Plaintiff told Jordan to hold on a minute so he could jump on the bike with him (Complaint ¶ 16; ECF No. 1; Page ID. 4 and 5). Plaintiff and Jordan rode together on the bike for approximately 40 yards to Horn's Gaslight Bar and Restaurant ("Horn's"), then they were stopped by Defendant Akers who warned Plaintiff and Jordan they could not ride double on the bike. (Complaint ¶ 17; ECF No. 1, Page ID. 5). When stopped, Plaintiff and Jordan got off the bike as requested and Jordan put the kickstand down for the bike, although it rolled forward and fell to the ground. Jordan immediately picked it up from the ground and steadied it upright. (Complaint ¶ 18, ECF No. 1, Page ID. 5).

After the encounter with Defendant Akers, Plaintiff went into Horn's while the rest of the group followed and took a seat near the front window at a table. (Complaint ¶ 19, ECF No. 1, Page ID. 5). Shortly after being in Horn's, Defendant Akers returned, banged on the window and pointed at Plaintiff and yelled: You get out here. (Complaint ¶ 20, ECF No. 1, Page ID. 5). Plaintiff went outside as requested. (Complaint ¶ 21,

ECF No. 1, Page ID. 5). Defendant Akers was very aggressive with Plaintiff after he exited Horn's. (Complaint ¶ 22, ECF No. 1, Page ID. 5). Defendant Akers immediately accused Plaintiff of stealing a bike. (Complaint ¶ 23; ECF No. 1, Page ID. 6). In front of Horn's, Defendant Akers said, "you are a police officer, you should know better than steal a bike." (Complaint ¶ 24; ECF No. 1, Page ID. 6). Jordan, who was with Plaintiff, told Defendant Akers Plaintiff knew nothing about the bike. (Complaint ¶ 25; ECF No. 1, Page ID. 6). Despite this, Defendant Akers continued to question Plaintiff and accuse him of stealing the bike. (Complaint ¶ 26; ECF No. 1, Page ID. 6). Defendant Akers failed to get the names or question other individuals who were with Plaintiff and Jordan at the time of the incident. (Complaint ¶ 27; ECF No. 1, Page ID. 6).

Plaintiff and Jordan were escorted by Defendant Akers to the Police Department on Mackinac Island. (Complaint ¶ 28; ECF No. 1, Page ID. 6). Jordan again told Defendant Akers that Plaintiff had nothing to do with the bike. (Complaint ¶ 29; ECF No. 1, Page ID. 6). Plaintiff continually denied any knowledge of the bike being stolen and told Defendant Akers he did not know where the bike came from and he was

just riding with his friend-Jordan. (Complaint ¶ 30; ECF No. 1, Page ID. 6). Eventually, Plaintiff was so fed up with being harassed by Defendant Akers he told him to either book him for possessing a stolen bike or let him go back to the bar. (Complaint ¶ 32; ECF No. 1, Page ID. 7). Defendant Akers eventually released Plaintiff to go back to the bar. (Complaint ¶ 33; ECF No. 1, Page ID. 7).

Defendant Akers notified his supervisor, Defendant Demers[3], of the incident and he told Defendant Akers to proceed with a report and enforcement action. (Complaint ¶ 34; ECF No. 1, Page ID. 7). Defendants knew there was video surveillance at most businesses on Mackinac Island, and chose not to include all video even though they were aware of its presence on Mackinac Island. (Complaint ¶ 35; ECF No. 1, Page ID. 7). Before the warrant for Plaintiff was requested, on or about May 19, 2018, Defendant Akers told a Mackinac Island Police officer video showed Jordan rode the bike in question to the Pink Pony alone and Plaintiff was not with him, which was in direct conflict with

---

[3] Defendant Demers denies being Defendant Akers's supervisor (para. 7, ECF No. 21-1, PageID.189), Defendant Akers, on the other hand, attests to the fact that Defendant Demers is his supervisor. (para. 9, No. 17-2, PageID.75). This contradiction underscores why this case should not be decided on summary judgment. A Court cannot weigh evidence or determine credibility in deciding summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

the report Defendant Akers submitted.[4]  (Complaint ¶ 35; ECF No. 1, Page ID. 7).  Despite this, Defendant Akers failed to obtain and view relevant video surveillance before submitting a report to his commanding officer, Defendant Demers, for a warrant request.  (Complaint ¶ 36; ECF No. 1, Page ID. 7).  A warrant request was submitted on or about May 21, 2018 by both or one of the Defendants without receiving all relevant information, including relevant video surveillance which would have demonstrated there was no probable cause for Plaintiff to be charged with either Larceny of a bike of less than $200 or Disorderly Conduct. (Complaint ¶ 38; ECF No. 1, Page ID. 8).  The warrant request stated: "I believe he should be charged with disorderly at a minimum and larceny because he should have knew better." (Complaint ¶ 39; ECF No. 1, Page ID. 8).

When requesting a warrant for Plaintiff's arrest and prosecution, the Defendant Officers materially and knowingly misrepresented the

---

[4] Attached as Exhibit 2 is a redacted Internal Investigation report against Defendant Akers.  In it on page 26, it says that a Mackinac Police Officer was told by Defendant Akers on May 19, 2018 (the day after the incident), that the video surveillance from the Pink Pony Bar showed D/Sgt Jordan rode up to the Pink Pony Bar by himself.  Although arguably not relevant to the present Motion, Defendant Akers argues in his Motion the surveillance video in the complaint was not readily available (See ECF No. 17, PageID.65), yet, there is documentary evidence which will be part of discovery, supporting Plaintiff's allegations, which shows the video was "readily available" and known by Defendant Akers. This supports how this motion by Defendant Akers is premature.

facts, and obfuscated, distorted, or confused the truth in one or more of the following ways:

a. Failing to retrieve relevant video surveillance including video from Horn's even though they knew within 24 hours that the video was in conflict with the report;

b. Disregarding statements from Jordan that Plaintiff did not know anything about the bike which was heard by witnesses;

c. Failing to interview witnesses who were at the scene;

d. Making assumptions, such as assuming the bike had been stolen twice, without any evidence or video surveillance evidence supporting said assumption; and,

e. Misrepresenting what actually happened. (Complaint ¶ 40; ECF No. 1, Page ID. 8 and 9).

Defendant Akers's Original Incident Report, which caused the criminal prosecution against Plaintiff, contained misleading and/or false information including, but not limited to, the following:

a. "D/Sgt Jordon got on a bike that was parked at the curb, and D/F/Lt. Longuski got on behind him."

b. "Both jumped off, letting the bike fall to the road (it fell on its left side)."

c. "readily apparent that both D/Sgt Jordan and D/F/Lt. Longuski were intoxicated" and "due to their increasing level of intoxication."

d. "…the bike was still laying in the roadway."

e. "D/Sgt Jordan and D/F/Lt. Longuski then came out of the Pink Pony and took the bike for their own use, stealing it a second time."

f. "…this would indicate D/F/Lt Longuski would have known it was not D/Sgt Jordan's bike."

g. "…both D/Sgt Jordan and D/F/Lt Longuski did not return the bike, despite having an opportunity to do so once [Akers] informed them it was stolen."

h. "…their disorderly conduct consisted of their frequent use of profane language, their riding a bike in an unsafe manner, stealing a bike which is directly contradictory to their profession as troopers, and their lack of concern for others' safety in leaving the bike in the road. All of this behavior appeared to be directly related to their obvious intoxication." (Complaint ¶ 45; ECF No. 1, Page ID. 10).

Defendants omitted exculpatory information when providing information to the Prosecutor, including, but not limited to, the following:

a. Video footage outside the Pink Pony on 5/18/2018, beginning at 11:00:10. The video footage would have showed, inter alia: Plaintiff did not ride the bike to Pink Pony, Plaintiff left the Pink Pony with a group of people - not on a bike, and someone other than Plaintiff got on the bike after exiting the Pink Pony (the same person who rode the bike to the Pink Pony).

b. Evidence that Plaintiff led a group of people from the Pink Pony to Horn's Bar on 5/18/2018 at approximately 11:11:32. Officer Kurtis Morin, a Mackinac Island Police Officer, saw Plaintiff and the group of people and stated in his report that the

group, which included Plaintiff, was probably not even aware the bike was stolen.

c. Defendant Akers at no time asked Plaintiff to take a sobriety test of any kind nor was Plaintiff ever asked how much alcohol he had consumed.

d. Defendants failed to obtain video footage outside of Horn's at approximately 11:30 p.m., which would have showed when Defendant Akers called Plaintiff and D/Sgt Jordan out of the bar.

e. Defendant Akers failed to get the names and statements of individuals who witnessed the events of May 18, 2018. (Complaint ¶ 46; ECF No. 1, Page ID. 11).

On May 23, 2018, Plaintiff was arrested while at work and charged with the crimes of Larceny under $200, MCL 750.3565 and a Misdemeanor for Disturbing the Peace, MCL 750.170. (Complaint ¶47; ECF No. 1, Page ID. 11)

## LEGAL ANALYSIS

## Standard for 12(b)(6) Motion

Defendant Akers has filed the present motion pursuant to Fed.R.Civ.P. 12 (b)(6). In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a Court must "treat as true all of the well-stated allegations of the complaint." *Bower v. Federal Express Corp.*, 96 F.3d

200, 203 (6th Cir. 1996). In addition, a Court must construe all allegations in the light most favorable to the Plaintiff. *Id.*

In support of his Motion, Defendant Akers attaches his affidavit, which does not simply verify the Complaint, it submits facts outside the pleadings, and Michigan State Police Incident Report.   Contrary to Defendant Akers's argument, the documents are not "undisputed." Indeed, the facts asserted by Defendant Akers in his affidavit are in dispute and his report includes factual inaccuracies and omissions, and therefore, is in dispute.   Moreover, the affidavit is a not a public record (pleading, order, paper filed in another pending court, record or report of administrative body, legislative history of law, rules or ordinances), and while the MSP report may arguably be a public record, the report is subject to reasonable dispute and should be excluded from consideration for that reason. *Pakootas v. Teck Cominco Metals, Ltd.*, 632 F. Supp.2d 1029, 1032 (E.D. Wash. 2009) (*citing Intri-Plex Techs., Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007)).

The Sixth Circuit has held, "[w]hen a party moves to dismiss an action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, both sides proceed with the expectation that the court

will decide the motion on the basis of the pleadings alone unless the court notifies them otherwise." *Song v. Elyria*, 985 F.2d 840, 842 (6th Cir. 1993). If matters outside the pleadings are presented to the Court, and not excluded, the motion shall be treated as one under Fed.R.Civ.P. 56, and the parties should be given notice and an opportunity to present all relevant materials pertinent to a motion under Fed.R.Civ.P. 56.

Any consideration by this Court on a Motion for Summary Judgment is premature. It is well established that the District Court should decline to rule on motions for summary judgment before discovery has been conducted. *Siggers v. Campbell*, 652 F.3d 681, 697-98 (6th Cir. 2011)(holding that trial court abused its discretion by refusing to delay consideration of summary judgment motions to provide plaintiff time to obtain discovery). Indeed, the Sixth Circuit has held merely because the state defendants have asserted qualified immunity as a defense is not proper justification to decide a summary judgment before providing the plaintiff an opportunity for discovery. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). Accordingly, this Court should only decide the present Motion based on the pleadings pursuant to 12(b)(6). For the reasons stated below, Plaintiff has stated claims upon which relief can be

granted, and Defendant Akers's Motion for Dismissal should be denied in its entirety.

## I. Plaintiff has stated Constitutional Claims under §1983 for Violation of Plaintiff's Procedural Due Process Claim under the Fourteenth Amendment and Malicious Prosecution under the Fourth Amendment.

### A. Plaintiff has stated a Procedural Due Process Claim Pursuant to the Fourteenth Amendment.

In Count I of his Complaint, Plaintiff has asserted a claim under §1983 for violation of his due process rights under the Fourteenth Amendment. In *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009), the Sixth Circuit cited with approval an Eleventh Circuit case holding, "a plaintiff states a Section 1983 claim against a police officer who, after learning of 'patently exculpatory evidence,' deliberately fails to disclose to the prosecutor." *citing McMillian v. Johnson,* 88 F.3d 1554, 1569 (11th Cir. 1996). The *Moldowan* case held, "it is evident that the constitutional principles recognized in *Brady* apply just as equally to similar conduct on the part of police, and thus support our recognizing that the police can commit a constitutional deprivation analogous to that recognized in *Brady* by withholding or suppressing exculpatory material. Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions

must comport with prevailing notions of fundamental fairness." *Id.* at p.

724, *citing California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528,

81 L. Ed. 2d 413 (1984).

Plaintiff's Complaint alleges that after Defendant Akers learned of

exculpatory evidence[5], he failed to disclose that evidence to the

Prosecutor. In this regard, paragraph 46 of Plaintiff's Complaint states

as follows:

> "Defendants omitted exculpatory information when providing information to the Prosecutor, including, but not limited to, the following: a. Video footage outside the Pink Pony on 5/18/2018, beginning at 11:00:10. The video footage would have showed, inter alia: Plaintiff did not ride the bike to Pink Pony, Plaintiff left the Pink Pony with a group of people - not on a bike, and someone other than Plaintiff got on the bike after exiting the Pink Pony (the same person who rode the bike to the Pink Pony). b. Evidence that Plaintiff led a group of people from the Pink Pony to Horn's Bar on 5/18/2018 at approximately 11:11:32. Officer Kurtis Morin, a Mackinac Island Police Officer, saw Plaintiff and the group of people and stated in his report that the group, which included Plaintiff, was probably not even aware the bike was stolen. c. Defendant Akers at no time asked Plaintiff to take a sobriety test of any kind nor was Plaintiff ever asked how much alcohol he had consumed. d. Defendants failed to obtain video footage outside of Horn's at approximately 11:30 p.m., which would

---

[5] Indeed, Defendant Demers attaches a Supplemental Order from the criminal action which states, "the Court will find that the redacted portions (Akers's internal investigation attached as Ex. 2) are relevant and potentially exculpatory to Defendant in this matter." (ECF No. 20, PageID.134). Although the Court should accept Plaintiff's well-pled Complaint, the document submitted by the co-Defendant in support of his 12(b)(6) Motion underscores why this Motion is premature and how discovery will support Plaintiff's factual allegations, such as the allegation here that Defendants failed to disclose exculpatory evidence.

have showed when Defendant Akers called Plaintiff and D/Sgt Jordan out of the bar.  e. Defendant Akers failed to get the names and statements of individuals who witnessed the events of May 18, 2018." (Complaint ¶ 46; ECF No. 1, Page ID. 11).

Under *Moldowan v. City of Warren*, Plaintiff has stated a claim under §1983 because he has alleged Defendant Akers withheld or suppressed exculpatory material.   The facts pled by Plaintiff are sufficient to demonstrate a violation of Plaintiff's Fourteenth Amendment due process rights.  Accordingly, Plaintiff's claim should not be dismissed.  Additionally, Defendant Akers's premature Fed.R.Civ.P. 56 motion should be denied, as well.

B. **Plaintiff has stated a Malicious Prosecution Claim Pursuant to the Fourth Amendment.**

Plaintiff's Complaint includes a violation of the Fourth Amendment for malicious prosecution.  Defendant Akers's motion addresses this claim and seeks dismissal of Plaintiff's Fourth Amendment claim for malicious prosecution.  ECF No.17, PageID.60.  Plaintiff's Count I of his Complaint asserts violations of the Fourteenth Amendment and states the actions by Defendant Akers were "malicious" and asserts violations of the Fourteenth Amendment.  ECF No. 1, PageID.12.  The Fourth Amendment is applied to the states through the Fourteenth Amendment.

*Riley v. Kurtz*, 893 F. Supp. 709, 716 (E.D. Mich. 1995). Plaintiff submits his Complaint asserts constitutional deprivations under the Fourteenth Amendment for violation of procedural due process, *supra,* and Fourth Amendment for malicious prosecution.[6]

The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010), *citing Barnes v. Wright,* 449 F.3d 709, 715-16 (6th Cir. 2006). In order to establish a malicious prosecution claim under §1983, a plaintiff must prove the following: (1) criminal prosecution was initiated against the plaintiff and that the defendant made, influenced or participated in the decision to prosecute; (2) lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth

---

[6] If the Court finds it is unclear from his Complaint that he is asserting both the constitutional deprivations under the Fourteenth (procedural due process) and Fourth Amendment (malicious prosecution), Plaintiff seeks leave to amend his Complaint. Under Fed.R.Civ.P. 15(a)(2), leave to amend should be freely given when justice so requires. The Supreme Court has held that leave to amend should be liberally granted, in the absence of a good reason to do so, such as prejudicial delay, bad faith, or futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding must have resolved in the plaintiff's favor. *Id.* at pp. 308-9.

First, Plaintiff's Complaint alleges facts, which demonstrate Defendant Akers influenced or participated in the decision to prosecute the plaintiff. In *Sykes, supra,* at p. 316-17, the Sixth Circuit found an investigating officer influenced or participated in the decision to prosecute the plaintiff based on misrepresentations and omissions in his arrest-warrant application and investigative report. Plaintiff has pled allegations in his Complaint concerning Defendant Akers's misrepresentations and omissions in his investigative report and warrant request. Specifically, Plaintiff's Complaint alleges the following:

> "45. Defendant Akers's Original Incident Report, which caused the criminal prosecution against Plaintiff, contained misleading and/or false information including, but not limited to, the following:
>
> a. "D/Sgt Jordon got on a bike that was parked at the curb, and D/F/Lt. Longuski got on behind him."
> b. "Both jumped off, letting the bike fall to the road (it fell on its left side)."
> c. "readily apparent that both D/Sgt Jordan and D/F/Lt. Longuski were intoxicated" and "due to their increasing level of intoxication."
> d. "...the bike was still laying in the roadway."

    e. "D/Sgt Jordan and D/F/Lt. Longuski then came out of the Pink Pony and took the bike for their own use, stealing it a second time."

    f. "…this would indicate D/F/Lt Longuski would have known it was not D/Sgt Jordan's bike."

    g. "…both D/Sgt Jordan and D/F/Lt Longuski did not return the bike, despite having an opportunity to do so once [Akers] informed them it was stolen."

    h. "…their disorderly conduct consisted of their frequent use of profane language, their riding a bike in an unsafe manner, stealing a bike which is directly contradictory to their profession as troopers, and their lack of concern for others' safety in leaving the bike in the road. All of this behavior appeared to be directly related to their obvious intoxication." (Complaint ¶ 45; ECF No. 1, Page ID. 10).

In addition to providing false statements in the investigative report, Plaintiff also asserted Defendant Akers was involved with the arrest warrant. In this regard, Plaintiff has pled: "When requesting a warrant for Plaintiff's arrest and prosecution, the Defendant Officers materially and knowingly misrepresented the facts, and obfuscated, distorted, or confused the truth. (Complaint ¶ 40; ECF No. 1, Page ID. 8 and 9). Based on the allegations in the Complaint, Plaintiff has sufficiently pled facts to demonstrate Defendant Akers influenced or participated in the decision.

Second, Plaintiff has pled that there was a lack of probable cause for the criminal prosecution. Probable cause exists if there is an objectively reasonable basis for the belief that a crime has been committed. *United States v. McClain,* 444 F.3d 556, 563 (6th Cir. 2005). At paragraph 44, Plaintiff's Complaint states, "[t]hat no reasonably competent Police Officer would have believed that probable cause existed to initiate or continue a prosecution against Plaintiff, based upon the lack of evidence developed in this case." ECF No. 1, PageID.10. Notably, the Sixth Circuit has held generally whether there was probable cause in a §1983 action presents a jury question. *Klein v. Long,* 275 F.3d 544, 550 (6th Cir. 2001). Plaintiff has sufficiently pled Defendant Akers lacked probable cause in his Complaint.

Third, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. In *Albright v. Oliver*, the US Supreme Court held Fourth Amendment protections extend beyond an initial seizure. 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The Court further found a person continued to be seized for Fourth Amendment purposes when their freedom of action was

restrained due to pending criminal proceedings including requirements to appear, and that there are many forms of damages and injury which occur between an initial arrest and criminal trial, recovery for which requires recognition of the Fourth Amendment's continuing protection. *Id.* at pp. 277-78.   When an officer restrains an individual's liberty "by means of physical force or show of authority," Fourth Amendment protections attach. *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). A person's liberty is restrained if a reasonable person in the circumstances would not believe that he was free to leave and ignore the officer's requests. *See e.g., United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980).

First, Plaintiff's Complaint alleges he was not free to leave after being ordered out of Horn's by Defendant Akers.  Plaintiff alleges he was escorted by Defendant Akers to the police station.  (Complaint ¶ 28; ECF No. 1, Page ID. 6).  Second, Plaintiff's Complaint alleges he was arrested and charged with the crimes of Larceny under $200, MCL 750.3565 and a Misdemeanor for Disturbing the Peace, MCL 750.170.  ECF No. 1, PageID.11.   Accordingly, Plaintiff satisfies the third element of a malicious prosecution claim, as well.

The Fourth and final element for a Fourth Amendment malicious prosecution claim is the criminal proceeding must have resolved in the plaintiff's favor. In paragraph 48, Plaintiff alleges, "...the wrongful charges against Plaintiff were eventually dismissed." Accordingly, Plaintiff has pled that the criminal proceeding was resolved in his favor.

Plaintiff has pled facts in his Complaint to support a claim under the Fourth Amendment. Accordingly, Plaintiff's Count I §1983 claim should not be dismissed. Alternatively, at this early stage in the case, it is premature to dismiss Plaintiff's claim under Fed.R.Civ.P. 56, and Defendant Akers's Motion for Summary Judgment should be denied, as well.

### C. Defendant Akers is not entitled to Qualified Immunity under Count I of Plaintiff's Complaint.

Defendant Akers submits he is entitled to qualified immunity as to Plaintiff's constitutional claims in Count I of his Complaint. This Court set out the legal framework for determining whether there is qualified immunity in *Guilford v. Frost*, 269 F.Supp.3d 816, 824 (W.D. Mich. 2017), as follows:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  Qualified Immunity is a legal question for the Court to resolve. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Elder v. Holloway*, 510 U.S. 510, 516, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994)). When resolving an officer's assertion of qualified immunity, the court determines (1) whether the facts the plaintiff has alleged or shown establishes the violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the incident. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013) (citing *Pearson v. Callahan* 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). Courts may examine the two prongs in any order, depending on the facts and circumstances of each case. *Id.* at 567-68.

To determine whether a law is clearly established, this Court ordinarily looks to decisions of the Supreme Court and the Sixth Circuit. *Id.* Then decisions of the courts within the circuit and of other Court Appeals are looked at, as long as the existing precedent places the constitutional question beyond debate. *Id.*, citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

In the present case, the constitutional rights at issue are due process and malicious prosecution.  Plaintiff has not asserted a Fourth Amendment violation arising out of a warrantless arrest or search. Defendant Akers confuses the argument on qualified immunity by

relying primarily on cases, which involve criminal defendants bringing constitutional claims arising out of warrantless arrests and searches.[7] This case involves neither a warrantless arrest nor search.

As set forth above, the constitutional violations are due process and malicious prosecution because the investigating officer – Defendant Akers – misrepresented facts and failed to disclose exculpatory evidence. Plaintiff has pled facts in his Complaint for violations of his XIV and IV Amendment rights, as set for above in subsection A. and B., *supra*.

The next inquiry for the Court is whether the right at issue was clearly established at the time of the incident. The incident occurred on or about May 18, 2018, when Plaintiff attended a polygraph training conference on Mackinac Island (Complaint ¶ 12; ECF No. 1, Page ID. 4). As to Plaintiff's due process claim, he is alleging his constitutional right to due process was violated because Defendant Akers – an investigating officer – suppressed exculpatory evidence. The Sixth Circuit in 2009, in *Moldowan*, *supra*, cited by Defendant Akers, held, "a reasonable police

---

[7] e.g., *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *United States v. Abdi*, 463 F.3d 547, 557-58 (6th Cir. 2006); *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998); *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001); *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).

officer would know that suppressing exculpatory evidence was a violation of the accused's constitutional rights." *Id.* at p. 319.

The 2009 Sixth Circuit case – *Sykes v. Anderson* – also supports Plaintiff's argument that he had a clearly established right not to be subject to malicious prosecution. In *Sykes*, the Court held there was no probable cause to initiate criminal proceedings based primarily on surveillance video, which provided no reasonable grounds for the belief that the criminal defendant bringing the claim was a perpetrator in the robbery. *Id.*, at p. 311. The Sixth Circuit decision also concluded the officer influenced the decision to prosecute because of knowing misstatements in the investigatory material. *Id.* at pp. 316-17. Based on the officer initiating and influencing the criminal prosecution, the Sixth Circuit held there was a claim for malicious prosecution.

Similarly, in the present case, Plaintiff's Complaint alleges Defendant Akers initiated and continued criminal proceedings despite having reasonable grounds for the belief Plaintiff did not steal the bike or engage in disorderly conduct.[8] Like *Sykes*, there was video evidence

---

[8] Plaintiff's Complaint alleges a lack of probable cause for both criminal charges against him – larceny of a bike and disorderly – he did not get a citation for riding double on a single user bike. Accordingly, Plaintiff has stated a claim of malicious prosecution as to both the criminal charges. Arguably, there is case law, which suggests a finding of probable cause on one charge does not preclude a claim for malicious prosecution on remaining charges. *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991).

available to Defendant Akers, which he disregarded and failed to disclose, as alleged in Plaintiff's Complaint.   Indeed, Plaintiff's Complaint alleges, "[b]efore the warrant for arrest for Plaintiff was requested, on or about May 19, 2018, Defendant Akers told a Mackinac Island Police Officer video showed Jordan rode the bike in question to the Pink Pony alone and Plaintiff was not with him." (ECF No. 1, PageID.7). Not only does the evidence contradict Defendant Akers's report, it also was exculpatory evidence that Plaintiff did not steal the bike.

Defendant Akers suggests the evidence of the surveillance video is not exculpatory; yet the evidence clearly demonstrates Plaintiff could not have stolen the bike – Plaintiff was inside the bar when Jordan pulled up with the bike to the bar.   The video on its face exonerates Plaintiff of being a thief – any reasonable factfinder would conclude it is exculpatory evidence.   At a minimum, Plaintiff's Complaint at paragraph 46 states that it is exculpatory.   Accordingly, Plaintiff has pled a claim, even if Defendant Akers wants to suggest to the factfinder otherwise.

## II. Plaintiff can Overcome Governmental Immunity with regard to his Malicious Prosecution Claim.

The elements of Plaintiff's state claim for malicious prosecution are similar to his 1983 constitutional claim, with the added requirement of showing malice, which is a purpose other than that of securing the proper adjudication of the claim which the proceedings are based. *Friedman v. Dozorc*, 412 Mich 1, 48 (1981).

Plaintiff's Complaint alleges facts to demonstrate the subjective thoughts of Defendant Akers and how his initiation and continuation of the criminal proceedings was done with malice – for purposes other than that of securing a proper adjudication of the claim. At paragraph 39, Plaintiff alleges Defendant Akers was motivated to have Plaintiff criminally charged "because he should have knew better." ECF No. 1, PageID.8. Plaintiff alleges Defendant Akers was aggressive toward him (para. 22, ECF No. 1, ECF ID.5), and that Defendant Akers instituted the action against Plaintiff, "maliciously, for ulterior motives." (ECF No. 1, PageID.14). A Michigan State Police internal affairs complaint was filed against Defendant Akers for his actions toward Plaintiff. As alleged in paragraph 50 of Plaintiff's Complaint, Defendant Akers was found to be guilty of misconduct for his actions relating to the criminal charges against Plaintiff. ECF No. 1, PageID.12. Indeed, Defendant Akers was

disciplined for his failures in arresting and charging an individual who did not commit a crime.  Exhibit 1.  Accordingly, Plaintiff has pled facts in his Complaint demonstrating malice by Defendant Akers.  Therefore, Plaintiff's state malicious prosecution claim should not be dismissed. Alternatively, summary judgment should also be denied.

## CONCLUSION

Defendant Akers attempts to paint Plaintiff in a poor light suggesting he acted like a fool in public; it is Defendant Akers's initiation and continuation of criminal action against Plaintiff that was foolish. The judge in the criminal action recognized there was exculpatory evidence suppressed and the Michigan State Police disciplined Defendant Akers for arresting and charging Plaintiff when he had not committed a crime.  Defendant Akers's actions violated Plaintiff's constitutional rights and, therefore, Plaintiff respectfully requests this Honorable Court deny Defendant Akers's Motion for Dismissal.

Dated: 1/16/2020                    Respectfully submitted;

                                    GAFKAY LAW, PLC

                                    /s/Julie  A. Gafkay
                                    JULIE A. GAFKAY (P53680)
                                    Attorney for Plaintiff
                                    175 S. Main Street
                                    Frankenmuth, MI  48734
                                    (989) 652-9240
                                    jgafkay@gafkaylaw.com


## CERTIFICATE OF SERVICE

On January 16, 2020, Plaintiff's Response and Brief in Opposition to Defendant's Motion To Dismiss was electronically filed with the Clerk of the Court through the Court's CM/ECF System, which will send notification to such filings to the  attorneys of record.

                    GAFKAY LAW, PLC

                    /s/Julie A. Gafkay
                    Julie A. Gafkay (P53680)
                    Attorney for Plaintiff
                    175 S. Main Street
                    Frankenmuth, MI 48734
                    (989) 652-9240
                    jgafkay@gafkaylaw.com

## CERTIFICATE OF COMPLIANCE

Gafkay Law, PLC prepared the foregoing Response and Brief using the

Microsoft Word Program.  The total count of words used in the Brief is

6384.

.

GAFKAY LAW, PLC

/s/Julie A. Gafkay
Julie A. Gafkay (P53680)
Attorney for Plaintiff
175 S. Main Street
Frankenmuth, MI 48734
(989) 652-9240
jgafkay@gafkaylaw.com