UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ANDREW LONGUSKI,

    Plaintiff,

                        No. 2:19-cv-00190

v

                        HON. PAUL L. MALONEY

RYAN AKERS and
GARY DEMERS,              MAG. MAARTEN VERMAAT

    Defendants.

| | |
|---|---|
| Julie A. Gafkay<br>Attorney for Plaintiff<br>Gafkay Law, PLC<br>175 S. Main Street<br>Frankenmuth, MI 48734<br>(989) 652-9240<br>jgafkay@gafkaylaw.com<br>P58680 | John G. Fedynsky (P65232)<br>Andrew Jurgensen (P81123)<br>Assistant Attorneys General<br>Attorneys for Defendant Akers<br>Michigan Dep't of Attorney General<br>State Operations Division<br>P.O. Box 30754<br>Lansing, MI 48909<br>fedynskyj@michigan.gov<br>froehlichj1@michigan.gov<br><br>James T. Farrell (P35400)<br>Assistant Attorney General<br>Attorney for Defendant Demers<br>Michigan Dep't of Attorney General<br>MDOC Division<br>P.O. Box 30217<br>Lansing, MI 48909<br>(517) 335-3055<br>farrellj@michigan.gov |

**DEFENDANT AKERS'S REPLY BRIEF IN SUPPORT OF HIS
MOTION FOR DISMISSAL OR, IN THE ALTERNATIVE, SUMMARY
JUDGMENT, IN LIEU OF HIS ANSWER**

Dana Nessel
Attorney General

*/s/ John G. Fedynsky*
John G. Fedynsky (P65232)
Andrew Jurgensen (P81123)
Assistant Attorneys General
Attorneys for Defendant Akers
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
fedynskyj@michigan.gov
jurgensenA2@michigan.gov

Dated:  January 30, 2020

# ARGUMENT

Plaintiff Andrew Longuski's response brief has the salutary effect of narrowing the claims and issues before the Court. First, it is apparent that Longuski brings no claim for denial of substantive due process rights. He makes no argument in support of such a claim, relying instead on a fundamentally flawed theory of procedural due process violation. For the remaining Fourth Amendment and state law claims, Longuski similarly can find no refuge in his unpersuasive arguments. In addition, to the extent that any of co-defendant Gary Demers's dispositive arguments apply with equal force to the claims against Akers, those arguments are adopted and incorporated by reference. Fed. R. Civ. P. 10(c).

## I. The alleged factual disputes are immaterial and otherwise not central to the threshold immunity defenses of Akers.

Longuski's arguments confuse the role of investigating officer with that of criminal defense attorney, prosecutor as officer of the court, trial judge, and, ultimately, jury. There is no clearly established law requiring Akers to perform any of these functions in the field or ahead of a warrant request that, it cannot be disputed, was handed off to others. Clearly established law instead sets a much lower bar for qualified immunity: plain incompetence or knowing violation of the law. The allegations and record before the Court fall far short of that standard.

Whoever had the bike first, however it was parked, whenever Akers had access to video, and whatever Longuski and his friends had to say are all beside the point. The core facts supporting a reasonable suspicion of unlawful conduct are not disputed. Longuski does not and cannot dispute these facts. He was a tourist out

late on Mackinac Island, riding with another man on a ladies' bicycle registered to a summer worker.  That summer worker verified the value of the bicycle and denied giving anyone permission to ride off with it, ride on it with others, or park it anywhere else on the island.  Nor can Longuski dispute the information Akers received from local law enforcement and from the tavern employee who said she heard Longuski and his friends joking about where to go and whether Longuski and Derrick Jordan had stolen the bike.  Video that allegedly shows Jordan first appearing with the bike does not absolve Longuski from the determination based on other evidence that he was involved in both a larceny and disorderly conduct.  Even if it did, the trooper is not required by any law to establish someone's alibi or accept protestations of innocence that would bypass a full investigation and orderly criminal process.  The same goes for prolonging what could become a volatile encounter to identify and interview bystanders who were in no position to undercut the key facts already provided by the true owner, the tavern employee, and fellow officers on duty.[1]

---

[1] It should be further noted that any vague claim of the need for discovery or other factual development is unpersuasive for at least two reasons.  First, the matters raised are tangential and immaterial on their face and for the reasons argued.  Second, despite Akers's request in the alternative for summary judgment, Longuski has not presented the Court with an affidavit or declaration that he cannot present facts essential to justify opposition to the motion.  Fed. R. Civ. P. 56(d).  Accordingly, the motion is not premature and it can and must be decided on the merits.  Further, the Sixth Circuit "has held on multiple prior occasions that, when faced with a motion based on qualified immunity, a district court can not avoid ruling on the issue." *Summer v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004).

## II.   Longuski relies on inapplicable cases.

With respect to probable cause, Longuski questions reliance on a long list of Supreme Court decisions that have defined the concept for purposes of both criminal law and qualified immunity. (Pl.s' Br., pg. 24, PageID.232.) The distinction – warrantless arrests and searches – makes no legal difference here. The same standard applies – an ordinarily prudent faced with fluid circumstances and myriad probabilities as opposed to certainties.

Longuski also misplaces his reliance on *Moldowan v. City of Warren, et al*, 578 F.3d 351 (6th Cir. 2009). That case involved emergence of new evidence – alibi witnesses and questionable expert opinions on bitemark evidence – after conviction in a sex assault case. There is not even a hint of an allegation here that exculpatory evidence was suppressed or its existence was denied by any law enforcement officer. The video was in fact gathered, preserved, and made available for review by those authorized to make decisions about the prosecution. And in the case of a *nolle prosequi* dismissal, the concerns about manifest injustice are simply not present like they are when there is a conviction. Longuski thus misplaces his reliance on *Moldowan*.

The same is true for *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010). That case involved a robbery where police suspected an inside job. Compared to what Akers is alleged to have done or not done, the police misconduct in *Sykes* is beyond the pale and different in both kind and degree. The Sixth Circuit noted "several flagrant misrepresentations, exaggerations, and omissions of evidence that were key to determining whether probable cause existed to believe that the Plaintiffs had

5

committed any crime." *Id.* at 301. In *Sykes*, investigators falsely described what surveillance video actually showed and omitted the fact that video showed the presence of two armed men. *Id.* at 306-307. Officers also never disclosed to the prosecution, or the defense, records from the casino that contradicted officer testimony about one of the suspects allegedly gambling "approximately the same amount of money taken in the robbery in the three days following the robbery." *Id.* at 302. Nothing of that character is alleged to have happened here. Longuski does not allege misrepresentation of or suppression of the contents of a probative, exculpatory video. Instead, he critiques at the outset of an investigation the absence of the trooper's full review of or summary of video evidence that even in its best light only illuminates tangential matters and not the core of the criminal violations that were reasonably suspected. Longuski therefore misplaces his reliance on *Sykes* for any of his federal claims. There is no clearly established law requiring the kind of clairvoyance and completeness it is suggested should have been deployed for a Friday night misdemeanor investigation that was written up over the weekend and handed off in short order by the next few business days to command and prosecutorial authority.

### III. Disciplinary history is immaterial and even if considered not determinative for purposes of threshold immunity defenses.

Longuski's response, while acknowledging its irrelevance, appears to rely upon the results of an internal affairs investigation into this matter. Such material is plainly irrelevant and otherwise not material to the dispositive issues raised in

6

the motion. Whether Akers complied with official orders (the basis of the discipline) is a separate and distinct question that bears no logical or legal relation to whether he is entitled to qualified immunity under federal law or governmental immunity under Michigan law.[2]

Further, that material undercuts Longuski's attempt to present himself here as the vulnerable victim who did no wrong. That attempt has the power positions reversed. Longuski was the superior officer with a longer record of service. Akers was the one who in spite of that did what he could to perform his official duties and not give Longuski any special or favored treatment because of his rank and employment. In this context, the denial of immunity presents the specter of a chilling effect for any police officer investigating a fellow superior officer. That danger is real and it applies in cases of the most serious corruption or heinous felonies on down to the sophomoric tomfoolery upon which this case is premised.

---

[2] Longuski's Exhibit 1 references violation of "Official Order No. 1, Sections 4.5 and 4.8." (Pl.'s Ex. 1, PageID.242). Those official orders generally address conduct unbecoming and neglect of duty, which are discrete standards in the code of conduct that both fall far short of the type of misconduct required to deprive an officer of the protections of applicable immunity under law:

> Section 4.5 Members shall maintain a level of conduct in their personal and business affairs, which is in keeping with the highest standards of the law enforcement profession. Members shall conduct themselves at all times, both on and off duty, in a manner that will reflect favorably upon the department. Conduct unbecoming a member shall include that which brings the department into disrepute or reflects discredit on the individual as a member of the department or that which impairs the efficiency of the department.
>
> Section 4.8 Members shall not malinger, feign illness, or shirk their duties or responsibilities. Willful neglect of duty, including sleeping on duty, is prohibited. (Def.'s Ex. 1.)

Applicable immunity doctrine stands in the way of Longuski making a federal case (or a state law case) out of what should have been an ordinary misdemeanor complaint.

## CONCLUSION AND RELIEF REQUESTED

Trooper Akers respectfully requests that the Court (1) grant qualified immunity, (2) grant governmental immunity, (3) dismiss all claims, and (4) grant any other appropriate relief.

Respectfully submitted,

Dana Nessel
Attorney General


*/s/ John G. Fedynsky*
John G. Fedynsky (P65232)
Andrew Jurgensen (P81123)
Assistant Attorneys General
Attorneys for Defendant Akers
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
fedynskyj@michigan.gov
jurgensenA2@michigan.gov

Dated:  January 30, 2020

**CERTIFICATE OF SERVICE**

 I certify that on January 30, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record.

        */s/ John G. Fedynsky*
        John G. Fedynsky (P65232)
        Assistant Attorney General