UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANDREW LONGUSKI,                        )
                        Plaintiff,      )
                                        )        No. 2:19-cv-190
-v-                                     )
                                        )        Honorable Paul L. Maloney
RYAN AKERS and GARY DEMERS,             )
                        Defendants.     )
_____ )

## OPINION

This matter is before the Court on Defendant Ryan Akers' motion to dismiss (ECF No. 16) and Defendant Gary Demers' motion to dismiss (ECF No. 18) Plaintiff Andrew Longuski's complaint. For the reasons to be explained, the Court will grant the motion for the claims as pleaded but will allow Longuski to file an amended complaint clarifying his federal malicious prosecution claim.

## I.

This case, filed on September 24, 2019, alleges that Akers and Demers violated Longuski's due process rights and initiated a malicious prosecution against him.

As a preliminary note, the Court has considered both Longuski's complaint and the initial Michigan State Police ("MSP") Incident Report (ECF No. 17-3) because the Incident Report was referred to in the complaint and it is central to the claim. *See, e.g., Berry v. United States Dep't of Labor*, 832 F.3d 627, 637-68 (6th Cir. 2016). Thus, the following facts are taken from both the Complaint and the Incident Report.

Both Defendants are MSP Officers. At the relevant time, Longuski was also a Lieutenant with the MSP, working as a commander of the MSP's polygraph section. On May 18, 2018, after attending a polygraph training on Mackinac Island, he ate dinner at the Mission Point Hotel and then joined a group at the Pink Pony Bar. At about 11:00 p.m., the group decided to leave the Pink Pony and head to Horn's Gaslight Bar. Longuski was walking with the group when MSP Sergeant Jordan[1] rode past the group on a pink and purple ladies' bike that Jordan allegedly brought to the Pink Pony. Longuski asked Jordan to hold on a minute so that he could jump on the bike with him. The pair rode the bike to Horn's, where they were stopped by Defendant Akers, who warned them they could not ride double on the single bike. They got off the bike, and Jordan attempted to put the kickstand down for the bike but missed. The bike fell, but Jordan picked it up and steadied it upright.

The two went into Horn's with the rest of the group. Shortly thereafter, Akers "banged" on the window and told Longuski to get outside. Longuski went outside, and Akers said something to the effect of, "you are police officers, you should know better than to steal a bike." Akers took Longuski and Jordan to the Mackinac Island Police Department, where Longuski continued to deny knowledge of the bike being stolen and stated that he had only been a passenger on the bike for a short distance. Longuski grew fed up and told Akers to either charge him with possessing a stolen bike or let him return to the restaurant. Akers let Longuski go, but he did proceed with a report and enforcement action on Demers' advice.

---

[1] The complaint does not list Jordan's first name.

Akers did not view any video surveillance from the Pink Pony or Horn's, nor did he speak with any eyewitnesses.

The request for Longuski's arrest was submitted on May 21, 2018. Longuski argues that the warrant request included numerous false misrepresentations, and that Akers and Demers should have interviewed witnesses and viewed all available evidence before submitting a warrant. On May 23, 2018, Longuski was arrested at work and charged with larceny under $200 and disturbing the peace. He was removed from his position on or about that date. Longuski alleges that at some point between the incident and the arrest, Demers did view the surveillance videos, but failed to amend Akers' report to reflect that new information.

On September 24, 2018, the charges against Longuski were dismissed. Longuski made an internal complaint against Akers for misconduct. The MSP found Akers guilty of misconduct and issued him an eight-day suspension.

Longuski now brings two counts against the Defendants: 1) violation of due process rights by fabricating evidence against him, failing to disclose exculpatory evidence in his favor, and obfuscating or misrepresenting facts, and 2) malicious prosecution. Both Defendants have moved to dismiss.

## II.

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face." *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). If plaintiffs do not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. For Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; rather, "it must assert sufficient facts to prove the defendant with 'fair

4

notice of what the . . . claim is and the grounds upon which it rests.'" *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

## III.

### A.

Count I of Longuski's complaint brings a procedural due process claim. This claim fails for two reasons. First, it is the Fourth Amendment that establishes protections in this part of the criminal justice system, not the Fourteenth Amendment. *Wilson v. City of Shaker Heights*, 741 F. App'x 312, 317 n. 4 (6th Cir. 2018). Thus, a procedural due process claim is not viable in this case.

Moreover, even if the claim were viable, to bring a § 1983 claim for procedural due process violations, a plaintiff must first plead and prove the inadequacy of state processes and remedies that address the alleged due process violations. *Jefferson v. Jefferson County Public School System*, 360 F.3d 583, 588 (6th Cir. 2004). "The plaintiff must prove the inadequacy of state remedies as an element of [his] constitutional tort." *Id.*

The complaint alleges that the officers should have conducted a thorough investigation before submitting the warrant request, and that their failure to do so violated Longuski's due process rights. However, Longuski does not allege or demonstrate that the state criminal justice process was inadequate to remedy those errors. Even if he had pleaded the claim properly, the state process remedied any errors that may have been present in the initial investigation: charges were filed, and Longuski had adequate notice and opportunity to be heard. The remedy he sought was obtained on September 24, 2018, when an order of

nolle prosequi was entered. Therefore, Count I must be dismissed: Longuski did not suffer any procedural due process violation.

## B.

Count II of the complaint brings a state law claim for malicious prosecution. In Michigan, "[t]he plaintiff has the burden of proving (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews v. Blue Cross Blue Shield of Michigan*, 572 N.W.2d 603, 609-10 (Mich. 1998). On the issue of probable cause, "the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution." *Id.* at 613. In this case, the prosecutor maintained the prosecution until September 24, 2018, and there is no allegation that the prosecutor did not exercise his independent discretion in doing so. Therefore, Defendants have a complete defense to this claim, and Count II must be dismissed.

## C.

Longuski's response briefs argue that he is bringing a federal malicious prosecution claim as part of Count I (*see* ECF Nos. 22, 23). The Court does not read Count I to include a federal malicious prosecution claim, but the Court will grant Longuski's request to amend his complaint to explicitly include this claim. The amendment is not futile because, as explained below, the claim will likely survive a motion to dismiss.

To establish a federal malicious prosecution claim, a plaintiff must show 1) that a criminal prosecution was initiated against him and that the defendant made, influenced, or participated in the decision to prosecute; 2) that there was a lack of probable cause for the prosecution; and 3) that the plaintiff suffered a deprivation of liberty; and 4) that the prosecution terminated in plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-9 (6th Cir. 2010). There is no reasonable dispute as to the first, third, and fourth factors: the officers influenced and participated in the decision to prosecute by supplying the warrant request, Longuski suffered an deprivation of liberty when he was taken to the Mackinac Island Police Department and another when he was arrested, and the prosecution terminated in his favor. The only real dispute is whether probable cause existed for his arrest.

"In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). "[An] officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). That said, "once a police officer *has* sufficient probable cause to arrest, he need not investigate further." *Klein v. Long*, 275 F.3d 544, 551 (6th Cir. 2001). "[T]o have probable cause to arrest, a police officer must take into account all the evidence—both inculpatory and exculpatory—that he has at the time of the arrest. Where the police have sufficient inculpatory evidence to give rise to a determination of probable cause and they do not know of any exculpatory evidence, we have held that 'the failure to make a further investigation does not

negate probable cause.' " *Id.* at 552 (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 173 (6th Cir. 1987)).

Longuski alleges that the officers did not perform a sufficient investigation before determining that there was probable cause to arrest him. He alleges that during the period between the incident and his arrest, Defendants knew about the video surveillance, and that Demers allegedly reviewed the video and did not amend Aker's report to include that exculpatory evidence. Taking Longuski's allegation that the video evidence was exculpatory and that it was viewed but not included in the warrant request, the Court finds that Longuski has alleged enough facts to raise a question of fact regarding probable cause. Thus, amendment to add a federal malicious prosecution claim would not be futile.

Defendants have raised a qualified immunity defense to this claim. To evaluate a qualified immunity defense, first the Court "must decide whether the facts that the plaintiff has alleged or shown make up a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). Then the Court "must decide whether the right at issue was clearly established at the time of the defendant's misconduct." *Id.* (internal quotation marks and citation omitted). The Court may use its discretion to consider the factors in either order. *Id.* at 227.

Taking the complaint in the light most favorable to Longuski, the Court must assume that the officers did not have probable cause to pursue his arrest. Therefore, the initiation of a malicious prosecution violated Longuski's constitutional right to be free from malicious prosecution, which is a clearly established right in this circuit. *Webb v. United States*, 789

F.3d 647, 659-60 (6th Cir. 2015). At a broad level, the defendants do not appear to be entitled to qualified immunity.

Demers makes a more specific argument, alleging that he is entitled to qualified immunity because Longuski has failed to show that Demers made false statements in support of the arrest warrant. The qualified immunity analysis on this narrower issue requires a plaintiff to establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). If a plaintiff shows those two elements, a defendant may still be entitled to qualified immunity if he can demonstrate that his actions were objectively reasonable in light of clearly established law. *Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 542-44 (W.D. Ky. 2005). Longuski has met this burden: he alleges that Demers viewed the surveillance videos, which Longuski believes are exculpatory, and that Demers failed to amend the warrant request with this exculpatory evidence. If true, this demonstrates a reckless disregard for the truth that was material to the finding of probable cause, and Demers would not be entitled to qualified immunity. Thus, the Court concludes that amendment to add a federal malicious prosecution claim does not appear to be futile.

## IV.

For the foregoing reasons, the Court finds the complaint insufficient as pleaded, but finds that a federal malicious prosecution claim may be viable. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Akers' motion to dismiss (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Demers' motion to dismiss (ECF No. 18) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint within 21 days of the date of this Order.

**IT IS SO ORDERED.**

Date:  October 21, 2020                        /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge