# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**ANDREW LONGUSKI,**
      **Plaintiff,**

                     **CASE NO.: 2:19-cv-190**
                     **HON.: Paul L. Maloney**
                     **Magistrate Maarten Vermaat**

**v.**

**RYAN AKERS in his individual capacity, and**
**GARY DEMERS in his individual capacity.**
      **Defendants.**

_____

| | |
|---|---|
| **JULIE A. GAFKAY (P53680)** | **JAMES T. FARRELL (P35400)** |
| **GAFKAY LAW, PLC** | **COREY EVE BARKMAN** |
| **Attorney for Plaintiff** | **MICHIGAN DEPARTMENT OF** |
| **175 S. Main Street** | **ATTORNEY GENERAL** |
| **Frankenmuth, MI 48734** | **Attorney for Defendant Demers** |
| **(989) 652-9240** | **MDOC Division** |
| jgafkay@gafkaylaw.com | **P.O. Box 30217** |
| | **Lansing, MI 48909** |
| | **(517) 335-3055** |
| **JOHN G. FEDYNSKY (P65232)** | farrellj@michigan.gov |
| **JOSEPH T. FROEHLICH (P71887)** | |
| **MICHIGAN DEPARTMENT OF** | |
| **ATTORNEY GENERAL** | |
| **Attorneys for Defendant Akers** | |
| **State Operations Division** | |
| **P.O. Box 30754** | |
| **Lansing, MI 48909** | |
| **(517) 335-7573** | |
| fedynskyj@michigan.gov | |
| froehlichj1@michigan.gov | |

_____

# PLAINTIFF'S FIRST AMENDED COMPLAINT AND RELIANCE UPON JURY DEMAND

NOW COMES Plaintiff, Andrew Longuski, by and through his attorney, Gafkay Law, PLC, by Julie A. Gafkay and for his First Amended Complaint against the above-named Defendants states as follows:

## PRELIMINARY STATEMENT

1.  This is an action for declaratory relief and money damages brought by Plaintiff, a citizen and resident of the State of Michigan, against Defendants Trooper Ryan Akers and D/Sgt Gary Demers who are with the Michigan State Police arising out of conduct which occurred in May of 2018 and thereafter when Defendants caused Plaintiff to be maliciously prosecuted on false criminal charges without probable cause.

2.  Plaintiff seeks declaratory judgment that these officers, by causing him to be prosecuted without legal probable cause did violate his clearly established rights as guaranteed under Fourth Amendment of the Constitution.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over his claims pursuant to 28 U.S.C § 1331, 2201, and 2202.

4.    Venue is properly made in this Court pursuant to 28 U.S.C §
      1391(b), as the Defendants reside and the claims arose in the
      Western District of Michigan.

## PLAINTIFF AND DEFENDANTS

5.    That at all relevant times to this Complaint, Plaintiff was a resident
      of the State of Michigan.

6.    That at all relevant times to this Complaint, Defendants Trooper
      Ryan Akers (hereinafter "Defendant Akers") and D/Sgt. Gary
      Demers (hereinafter "Defendant Demers"), were acting within the
      scope of their employment and under color of law as Police Officers
      for the Michigan State Police.

7.     That each Defendant is being sued in his individual capacity.

8.    That the incident complained of in the lawsuit occurred in the City
      of Mackinac Island, Mackinac County, State of Michigan, with the
      events that began on or about May 18, 2018.

## BACKGROUND FACTS

9.    Plaintiff is a D/F/Lt with the Michigan State Police polygraph and
      commander of the polygraph section.

10.   Plaintiff has been with the Michigan State Police since 1994.

11.  On or about May 18, 2018, Plaintiff attended a polygraph training conference on Mackinac Island.

12.  On May 18, 2018, after attending a dinner at the Mission Point Hotel, Plaintiff, D/Sgt DeNoon, S/Sgt Heliin, Ms. DeNoon and Det. Gaudard took a carriage ride to the Pink Pony Bar.

13.  After being at the bar for approximately an hour and half to two hours, at approximately 11:00 p.m., other officers who had been at the conference joined Plaintiff's group.

14.  Shortly thereafter, the group decided to leave the Pink Pony Bar and walk to Horn's Gaslight Bar and Restaurant.

15.  Plaintiff began walking with most of the group towards the restaurant and D/Sgt Jordan ("Jordan") rode past the group, on a bike he had brought to the Pink Pony.  Plaintiff told Jordan to hold on a minute so he could jump on the bike with him.

16.  Plaintiff and Jordan rode together on the bike for approximately 40 yards to Horn's Gaslight Bar and Restaurant ("Horn's"), then they were stopped by Defendant Akers who warned Plaintiff and Jordan they could not ride double on the bike.

17. When stopped, Plaintiff and Jordan got off the bike as requested and Jordan put the kickstand down for the bike, although it rolled forward and fell to the ground.  Jordan immediately picked it up from the ground and steadied it upright.

18. After the encounter with Defendant Akers, Plaintiff went into Horn's while the rest of the group followed and took a seat near the front window at a table.

19. Shortly after being in the Horn's, Defendant Akers returned, banged on the window and pointed at Plaintiff and yelled: You get out here.

20. Plaintiff went outside as requested.

21. Defendant Akers was very aggressive with Plaintiff after he exited Horn's.

22. Defendant Akers immediately accused Plaintiff of stealing a bike.

23. In front of Horn's, Defendant Akers said, "You are police officers, you should know better than steal a bike."

24. Jordan, who was with Plaintiff, told Defendant Akers Plaintiff knew nothing about the bike.

25. Despite this, Defendant Akers continued to question Plaintiff and accuse him of stealing the bike.

26. Defendant Akers failed to get the names or question other individuals who were with Plaintiff and Jordan at the time of the incident.

27. Plaintiff and Jordan were taken by Defendant Akers in front of the Police Department on Mackinac Island.

28. Jordan again told Defendant Akers that Plaintiff had nothing to do with the bike.

29. Plaintiff continually denied any knowledge of the bike being stolen and told Defendant Akers he did not know where the bike came from and he had only been a passenger for a short distance.

30. Eventually, Plaintiff was so fed up with being harassed by Defendant Akers he told him to either book him for possessing a stolen bike or let him go back to the restaurant.

31. Defendant Akers eventually released Plaintiff to go back to the restaurant.

32. Defendant Akers notified Defendant Demers of the incident who told Defendant Akers to proceed with a report and enforcement action.

33. Defendant Akers completely fabricated when he stated he observed Jordan and Plaintiff steal the bike from the curb in front of the Pink Pony.  This was completely false as Plaintiff was the furthest from the bike in the group when it was taken from the curb.  Notably, another officer who was assisting Defendant Akers, stated the group of people walking down the street from the Pink Pony, which included Plaintiff, was likely unaware the bike was being stolen.

34. Defendants knew there was video surveillance at most businesses, and chose not to include all video even though they were aware of its presence on Mackinac Island.

35. Before the warrant for arrest for Plaintiff was requested, on or about May 19, 2018, Defendant Akers told a Mackinac Island Police Officer video showed Jordan rode the bike in question to the Pink Pony alone and Plaintiff was not with him, which was in direct conflict with the report Defendant Akers submitted.

36. Despite this, Defendant Akers failed to obtain and view relevant video surveillance before submitting a report to his commanding officer, Defendant Demers, for a warrant request; Defendant Demers subsequently obtained video from the businesses, reviewed

them, and chose to ignore or correct the discrepancies in Defendant Aker's report.

37. A warrant request was submitted on or about May 21, 2018 by both or one of the Defendants without receiving all relevant information, including relevant video surveillance which would have demonstrated there was no probable cause for Plaintiff to be charged with either Larceny of a bike of less than $200 or Disorderly Conduct.

38. The warrant request stated: I believe he should be charged with disorderly at a minimum and larceny because he should have knew better.

39. When requesting a warrant for Plaintiff's arrest and prosecution, the Defendant Officers materially and knowingly misrepresented the facts, and obfuscated, distorted, or confused the truth in one or more of the following ways:

    a. Failing to retrieve relevant video surveillance including video from Horn's and excluded portions of video from Horn's even though they knew within 24 hours that the video was in conflict with the report.;

b. Disregarding statements from Jordan that Plaintiff did not know anything about the bike which was heard by witnesses;

c. Failing to interview witnesses who were at the scene;

d.  Making assumptions, such as assuming the bike had been stolen twice, without any evidence or video surveillance evidence supporting said assumption; and,

e. Misrepresenting what actually happened.

40.   The above-mentioned false representations were made by Defendant Officers knowingly.  Alternatively, the above-mentioned false representations were made by Defendants with reckless disregard for the truth.

41.   These false misrepresentations or omitted facts were material to the finding of probable cause.

42.   A reasonably competent Police Officer would have known that before he or she can charge a citizen with a misdemeanor, there must be competent and credible evidence to support it.

43.   That no reasonably competent Police Officer would have believed that probable cause existed to initiate or continue a prosecution

against Plaintiff, based upon the lack of evidence developed in this case.

44. Defendant Akers's Original Incident Report, which caused the criminal prosecution against Plaintiff, contained misleading and/or false information including, but not limited to, the following:

   a. "D/Sgt Jordon got on a bike that was parked at the curb, and D/F/Lt. Longuski got on behind him."
   b. "Both jumped off, letting the bike fall to the road (it fell on its left side)."
   c. "readily apparent that both D/Sgt Jordan and D/F/Lt. Longuski were intoxicated" and "due to their increasing level of intoxication."
   d. "…the bike was still laying in the roadway."
   e. "D/Sgt Jordan and D/F/Lt. Longuski then came out of the Pink Pony and took the bike for their own use, stealing it a second time."
   f. "…this would indicate D/F/Lt Longuski would have known it was not D/Sgt Jordan's bike."
   g. "…both D/Sgt Jordan and D/F/Lt Longuski did not return the bike, despite having an opportunity to do so once [Akers] informed them it was stolen."
   h. "…their disorderly conduct consisted of their frequent use of profane language, their riding a bike in an unsafe manner, stealing a bike which is directly contradictory to their profession as troopers, and their lack of concern for others' safety in leaving the bike in the road. All of this behavior appeared to be directly related to their obvious intoxication."

45. Defendants omitted exculpatory information, with reckless disregard for the truth, when providing information to the Prosecutor, including, but not limited to, the following:

    a. Video footage outside the Pink Pony on 5/18/2018, beginning at 11:00:10.  The video footage would have showed, inter alia: Plaintiff did not ride the bike to Pink Pony, Plaintiff left the Pink Pony with a group of people - not on a bike, and someone other than Plaintiff got on the bike after exiting the Pink Pony (the same person who rode the bike to the Pink Pony).

    b. Evidence that Plaintiff led a group of people from the Pink Pony to Horn's Bar on 5/18/2018 at approximately 11:11:32. Officer Kurtis Morin, a Mackinac Island Police Officer, saw Plaintiff and the group of people and stated in his interview that the group, which included Plaintiff, was probably not even aware the bike was stolen.

    c. Defendant Akers at no time asked Plaintiff to take a sobriety test of any kind nor was Plaintiff ever asked how much alcohol he had consumed.

    d. Defendants failed to obtain video footage outside of Horn's at approximately 11:30 p.m., which would have showed when Defendant Akers called Plaintiff and D/Sgt Jordan out of the bar.

    e. Defendant Akers failed to get the names and statements of individuals who witnessed the events of May 18, 2018.

46. On May 23, 2018, Plaintiff was arrested while at work and charged with the crimes of Larceny under $200, MCL 750.3565 and a Misdemeanor for Disturbing the Peace, MCL 750.170.

47. Plaintiff was also removed from his position working in the polygraph unit.  It was not until on or about  September 24, 2018, that the wrongful charges against Plaintiff were eventually dismissed.

48. An FOIA request showed that no larceny of bicycle complaints were taken all summer of 2017 by Defendant Akers while on Mackinac Island even though an officer stated this happens every night on weekends on Mackinac Island. Defendant Akers recklessly charged Plaintiff to enhance his position in the department by prosecuting a commanding officer.

49. Plaintiff made an internal affairs complaint against Defendant Akers for misconduct, which was investigated by the Michigan State Police finding Defendant Akers was guilty of misconduct and issued an eight-day suspension.

## 42 USC § 1983 FOURTH AMENDMENT FEDERAL MALICOIUS PROSECUTION CLAIM AGAINST DEFENDANTS

50. Plaintiff incorporates by reference paragraphs 1 through 49 as fully stated above.

51. Plaintiff asserts a claim of federal malicious prosecution against Defendants because:

    a. Defendants initiated a criminal prosecution against Plaintiff and made, influenced, or participated in the decision to prosecute;

b. There was a lack of probable cause for the prosecution of Plaintiff;

c. Plaintiff suffered a deprivation of liberty; and

d. The prosecution of Plaintiff terminated in his favor.

52. That as a result of their unlawful, malicious, reckless, and indifferent acts or omissions, Defendants alone and in concert, conspired to and acted under color of law, but contrary to law and did deprive Plaintiff of his rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 USC § 1983, including his rights as guaranteed by the Fourth Amendment of the United States Constitution, by Defendants' actions set forth above.

53. That as a direct and proximate result of the conduct of Defendants, referred to more fully above, Plaintiff suffered loss of liberty; he suffered and continues to suffer embarrassment; indignation; anxiety; mental anguish; emotional distress; humiliation; outrage; shame; fear; loss of income; damage to reputation; denial of constitutional rights; and other injuries, damages or consequences related to the incident.

54.    Plaintiff also seeks punitive damages against Defendants based on their intentional, reckless, and/or callous disregard for plaintiff's constitutional rights.

THEREFORE, for all the above reasons, Plaintiff demands judgment against the individual Defendant Officers for whatever amount the jury may determine for compensatory damages, and further demands judgment against each individual Defendant Officer for punitive damages in whatever amount the jury may determine, plus costs, interest, attorney fees, and such other relief as Plaintiff may be entitled.

## RELIANCE UPON JURY DEMAND

Plaintiff hereby relies upon his jury demand heretofore filed in this matter.


Dated:        11/2/2020                    Respectfully submitted,

GAFKAY LAW, PLC

/s/Julie A. Gafkay
JULIE A. GAFKAY (P53680)
Attorney for Plaintiff
175 S. Main Street
Frankenmuth, MI 48734
(989) 652-9240
jgafkay@gafkaylaw.com

## **CERTIFICATE OF SERVICE**

On __November 2, 2020____, Plaintiff's First Amended Complaint was electronically filed with the Clerk of the Court through the Court's CM/ECF System, which will send notification to such filings to the attorneys of record.

GAFKAY LAW, PLC

/s/Julie A. Gafkay_____
Julie A. Gafkay (P53680)
Attorney for Plaintiff
175 S. Main Street
Frankenmuth, MI 48734
(989) 652-9240
jgafkay@gafkaylaw.com